**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**August 24, 2007**

**Elisabeth A. Shumaker**
**Clerk of Court**

PUBLISH

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

DENISE REID,

        Plaintiff-Appellant,

v.

        No. 06-1484

GEICO GENERAL INSURANCE
COMPANY, a Maryland corporation,

        Defendant-Appellee.

---

**APPEAL FROM THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLORADO**
**(D.C. No. 05-CV-01321-RPM)**

---

Submitted on the briefs:[*]

Robert B. Carey, Frances R. Johnson, The Carey Law Firm, Colorado Springs,
Colorado, for Plaintiff-Appellant.

Meloney Cargil Perry, Baker & McKenzie, Dallas, Texas, and Gregory K. Falls,
Deisch, Marion & Klaus, P.C., Denver, Colorado, for Defendant-Appellee.

---

Before **TACHA**, Chief Judge, **MURPHY** and **HOLMES**, Circuit Judges.

---

[*]    After examining the briefs and appellate record, this panel has determined
unanimously that oral argument would not materially assist the determination of
this appeal. *See* Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G). The case is
therefore ordered submitted without oral argument.

**TACHA**, Chief Judge.

Plaintiff Denise Reid appeals from a district court order denying her motion for partial summary judgment and awarding summary judgment in favor of defendant GEICO General Insurance Company ("GEICO") in this action seeking reformation of an automobile insurance contract. We have jurisdiction under 28 U.S.C. § 1291, and we affirm.

## I. Background

The Colorado Auto Accident Reparations Act, Colo. Rev. Stat. §§ 10-4-701 to 726 (repealed July 1, 2003) ("No-Fault Act" or "Act"), was enacted in 1973 with the purpose of avoiding inadequate compensation to all victims of automobile accidents in the State of Colorado. It required complying automobile insurance policies to include certain minimum or basic personal injury protection ("PIP") benefits to compensate injured persons for medical expenses and lost wages resulting from an automobile accident. The No-Fault Act also required an insurer to offer, in exchange for higher premiums, optional enhanced PIP coverage, and it was GEICO's obligation with respect to this enhanced coverage that gave rise to this lawsuit.

As pertinent here, the Act provided:

Every insurer shall offer for inclusion in a complying policy, in addition to the coverages described in section 10-4-706 [governing basic PIP], at the option of the named insured:

-2-

(I) Compensation of all expenses of the type described in section 10-4-706(1)(b)[1] without dollar or time limitation; or

(II) Compensation of all expenses of the type described in section 10-4-706(1)(b) without dollar or time limitations and payment of benefits equivalent to eighty-five percent of loss of gross income per week from work the injured person would have performed had such injured person not been injured during the period commencing on the day after the date of the accident without dollar or time limitations.

Colo. Rev. Stat. § 10-4-710(2)(a) (1999).

In September 1999, Ms. Reid called GEICO and purchased an automobile insurance policy over the telephone. The policy she chose included the minimum PIP coverage required under the Act. Within days of the telephone call, GEICO mailed to Ms. Reid a New Business Packet, which included a copy of her policy and various other forms relating to her coverage and other coverage that it offered, including enhanced PIP. The only form that is relevant to this appeal, however, is GEICO's Colorado Information and Option Form ("Option Form"), which set forth its options for both basic and enhanced PIP coverage. GEICO claims that between September 1999 and the date of the accident at issue in this lawsuit, it sent its Option Form to Ms. Reid six times, one was included in the New Business Packet and five more were sent in conjunction with later renewals. In support of its motion for summary judgment, GEICO submitted one such

---

[1]    Section 10-4-706(1)(b) governed an insurer's duty to offer minimum coverage for "all reasonable and necessary expenses for medical, chiropractic, optometric, podiatric, hospital, nursing, x-ray, dental, surgical, ambulance, and prosthetic services, and nonmedical remedial care and treatment . . . ."

Option Form, bearing Ms. Reid's signature and the date March 21, 2000. GEICO

claims that this is the only Option Form that Ms. Reid ever signed and returned.

The first two pages of the signed Option Form comprise descriptions of the

basic PIP and enhanced PIP coverage options available under Ms. Reid's

insurance policy. The second page contains a sub-section entitled

"Part 3 – Additional Personal Injury Protection (APIP) Options." Aplt. App.

at 195. This sub-section describes GEICO's options for enhanced PIP coverage

and begins with the following introductory paragraph:

> Higher limits of PIP coverage are available at your option. The
> higher limits are described below. For these options the separate
> $50,000 limit for medical expenses is replaced by a single aggregate
> limit for all PIP benefits that apply. The premium for APIP is based
> on a percentage of your Basic PIP premium. If you selected the PPO
> option for Basic PIP in Part 1, it will also apply to APIP. However,
> unlimited APIP (options 4, 5 or 6) is not available with the PPO
> option. APIP is not available with the Limited Basic PIP option.

*Id.* Below this paragraph is a box listing six options for enhanced PIP coverage.

Each option is designated with an option number in the first column, followed by

three more columns setting forth for each option (a) the "Total Aggregate Limit

of Applicable PIP Benefits;" (b) the applicable "Work Loss Limitations;" and

(c) a percentage reflecting the "Approximate Additional Premium Per Vehicle."

*Id.* GEICO offered this enhanced PIP coverage at various rates ranging from 35%

to 900% additional premium per vehicle. Ms. Reid, however, declined all options

-4-

by checking a box next to the statement "I do not want Additional PIP Benefits." *Id.*

In July 2002, Ms. Reid was injured in an accident while driving her GEICO-insured vehicle. GEICO paid her the full amount of the basic PIP benefits to which she was entitled under the terms of her policy. It did not pay for any enhanced PIP benefits. In July 2005, Ms. Reid sued GEICO in federal court based on diversity of citizenship, claiming that GEICO's offer of enhanced PIP coverage failed to meet the requirements of the No-Fault Act as interpreted in controlling case law. Her complaint alleges that she has unpaid medical expenses and work losses and seeks reformation of her insurance policy to provide unlimited medical and wage loss benefits. She also asserts causes of action for breach of contract and bad faith.

Shortly after Ms. Reid filed her complaint, the parties filed cross-motions for summary judgment. Ms. Reid argued that GEICO's offer of enhanced PIP coverage was deficient under the Act, and GEICO countered that Ms. Reid's claims were baseless because she had explicitly rejected enhanced PIP coverage in the March 21, 2000, Option Form. The district court ruled in favor of GEICO, concluding that its offer of enhanced PIP coverage to Ms. Reid, reflected in the signed Option Form, was sufficient to satisfy its obligations under the No-Fault Act.

Although the court rejected all of Ms. Reid's arguments, only some of them are relevant here. First, it rejected her claim that GEICO violated the Act by failing to offer enhanced coverage in writing prior to issuing her insurance policy. *See* Colo. Rev. Stat. § 10-4-706(4)(a) (1999) (requiring pre-sale written explanation of minimum PIP coverage). The court declined to interpret the statutory text and instead held that even if the Act imposed such an obligation with respect to enhanced PIP coverage, GEICO's failure to make a pre-sale written offer was harmless given the multiple written offers that it extended before Ms. Reid's accident. Second, the court concluded that GEICO's offer of enhanced PIP coverage was sufficient even though it did not specify that its work-loss benefits were payable at the 85% level, as set forth in § 10-4-710(2)(a)(II). Finally, the court rejected Ms. Reid's arguments based on what her enhanced PIP coverage would have been had she decided to buy it. Ultimately, the district court concluded that granting Ms. Reid the relief she requested "would give her the benefit of a policy [with] a premium cost 900% greater than what she paid." Aplt. App. at 919. Reformation, the court observed, is an equitable remedy, and it concluded that granting Ms. Reid that form of relief "would not only be inequitable, it would be unconscionable." *Id.* at 919-20. This appeal followed.

## II. Analysis

In this diversity case, the laws of Colorado, the forum state, govern our analysis of the underlying claims while federal law determines the propriety of the district court's grant of summary judgment. *Hill v. Allstate Ins. Co.*, 479 F.3d 735, 739 (10th Cir. 2007). "We review the grant of summary judgment de novo, applying the same standard as the district court pursuant to Rule 56(c) of the Federal Rules of Civil Procedure." *Id.* at 739-40 (alteration and quotation omitted). In applying the standard set forth in Rule 56(c), we must examine the record in the light most favorable to Ms. Reid, the non-moving party. *Id.*

Ms. Reid claims that in entering summary judgment in favor of GEICO, the district court overlooked significant flaws in its offer of enhanced PIP coverage. She makes a number of interrelated arguments on appeal, which, for ease of discussion, we distill to three main points. First, she maintains that GEICO's offer of enhanced PIP coverage could not have satisfied its obligations under the No-Fault Act because GEICO did not even have statutorily-compliant coverage to offer. Specifically, she claims GEICO's enhanced PIP work loss benefit terminated when the injured person reached age 65, in violation of § 10-4-710(2)(a). Second, she argues that GEICO's offer of enhanced PIP coverage was not reasonably calculated to permit her to make an informed decision as required under *Allstate Ins. Co. v. Parfrey*, 830 P.2d 905, 913 (Colo. 1992). And third, she challenges the district court's determination that

-7-

reformation of her policy would be unconscionable, arguing that this conclusion was based on an improper assumption that she did not wish to purchase enhanced PIP coverage. We address each of these arguments in turn.

## A. GEICO's Allegedly Non-Compliant Coverage

According to Ms. Reid, the Option Form that she signed contained an offer of enhanced PIP coverage that, a close examination of GEICO's policies revealed, did not exist. Specifically, she claims that the only endorsement that was available for her to purchase imposed a time limitation on the work loss benefit – until the injured person reached age 65. Since § 10-4-710(2)(a)(II) requires that the offer of compensation of work loss benefits be "without dollar or time limitations," Ms. Reid claims that GEICO's enhanced PIP coverage, as reflected in its endorsement, failed to comply with the statute. Thus, she argues, the district court had no choice but to conclude that GEICO violated the Act. We disagree. Ms. Reid's argument is based on the incorrect premise that § 10-4-710(2)(a) applies to insurance policies. It does not. The plain text of the statute, which necessarily governs our construction, *Parfrey*, 830 P.2d at 911, makes clear that its mandate applies to *offers* of enhanced PIP coverage. It requires that "[e]very insurer shall *offer* for inclusion in a complying policy . . . at the option of the named insured" the coverages set forth in sub-sections I and II. § 10-4-710(2)(a) (emphasis added). "The plain meaning of this language is that a named insured who has minimum PIP coverage under § 10-4-706 must be offered

the opportunity to purchase certain types of enhanced PIP coverage." *Hill*, 479 F.3d at 741 (quotation omitted). Therefore, the focus of our examination is not the language of any endorsement, which, notably, Ms. Reid chose not to purchase, but GEICO's offer of enhanced PIP coverage as reflected in the signed Option Form. *See Brennan v. Farmers Alliance Mut. Ins. Co.*, 961 P.2d 550, 554 (Colo. Ct. App. 1998) (explaining that "all that is required [under § 10-4-710] is that the insurer *offer* these extended benefits.").

We conclude that the Option Form contained an adequate offer of enhanced PIP coverage under the Act. The Colorado Court of Appeals recently clarified that the No-Fault Act required insurers to offer the enhanced PIP coverage described in both subsections I and II of § 10-4-710(2)(a). *Soto v. Progressive Mtn. Ins. Co.*, ___ P.3d ___, 2007 WL 2128189, at *4 (Colo. Ct. App. July 26, 2007) (reversing district court's grant of summary judgment to insurer). Thus, GEICO was required to offer Ms. Reid the enhanced medical benefit option described in subsection I and the enhanced medical benefit plus work loss option described in subsection II. *See id.* GEICO's "Option 1," offered at 35% additional premium, satisfied subsection I (enhanced medical benefits) because it offered enhanced medical coverage with an aggregate PIP limit of $200,000. Aplt. App. at 195. And for 900% additional premium, "Option 5" offered unlimited PIP coverage and a weekly work loss benefit unlimited in amount and duration. *Id.* This was sufficient to satisfy subsection II (enhanced medical

benefits plus wage loss option).  We therefore, reject any contention that GEICO's Option Form failed to offer coverage sufficient to satisfy the No-Fault Act.

## B.  Sufficiency of the Offer Under *Parfrey*

In *Parfrey*, the Colorado Supreme Court held that an insurer's duty to offer for purchase coverage higher than the minimum statutory limits "must be performed in a manner reasonably calculated to permit the potential purchaser to make an informed decision . . . ."  830 P.2d at 913.[2]  The *Parfrey* court also provided the following factors for us to consider in evaluating an insurer's performance with respect to its offer of enhanced coverage:

> In determining whether an insurer has fulfilled its statutory duty, a court may appropriately consider such factors as the clarity with which the purpose of [PIP] coverage was explained to the insured, whether the explanation was made orally or in writing, the specificity of the options made known to the insured, the price at which the different levels of [PIP] coverage could be purchased, and any other circumstances bearing on the adequacy and clarity of the notification and offer.

*Id.* at 913.  As the court went on to explain, however, in the final analysis, the determination of whether an insurer properly discharged its statutory duty to offer enhanced PIP coverage must be based on the totality of circumstances.  *Id.* at 914.

---

[2]     Although *Parfrey* involved an insurer's duty to offer enhanced uninsured/underinsured motorist coverage, we have held that its mandate applies equally to an insurer's obligation with respect to enhanced coverage under the No-Fault Act.  *Hill*, 479 F.3d at 742; *Padhiar v. State Farm Mut. Auto. Ins. Co.*, 479 F.3d 727, 733 (10th Cir. 2007).

Ms. Reid points to the following in support of her argument that GEICO's offer was deficient under *Parfrey*: (a) she did not receive any written explanation of enhanced PIP coverage before she obtained her policy; (b) she did not understand the difference between basic PIP and enhanced PIP coverage, and the Option Form provided no clarification; and (c) the Option Form did not provide that the work loss benefit was payable at 85% as described in § 10-4-710(2)(a)(II). Having considered these arguments we conclude that even if Ms. Reid's subjective understanding of enhanced PIP coverage was lacking, the Option Form that she signed was sufficient to discharge GEICO's duty under the Act as interpreted in *Parfrey*.

Ms. Reid emphasizes throughout her brief that she did not receive a written explanation of enhanced PIP coverage until after GEICO issued her policy, and this, she argues, mandates reformation. Part of this argument stems from the No-Fault Act's requirement that an insurer "provide written explanations of all available coverages prior to issuing any policy to an insured." § 10-4-706(4)(a). This requirement, however, appears in the section of the No-Fault Act governing minimum or basic PIP coverage, not enhanced PIP, which is dealt with later in § 10-4-710. Therefore, it is far from clear that its mandate applies to GEICO's offer of enhanced PIP coverage to Ms. Reid. We need not decide the issue, however, because we agree with the district court that any failure on GEICO's part was cured long before Ms. Reid had her accident. *See Padhiar v. State Farm*

*Auto. Ins. Co.*, 479 F.3d 727, 732-33 (10th Cir. 2007) (declining to decide whether No-Fault Act required written explanation of enhanced PIP coverage based on finding that written explanation had, in fact, been provided). Under Colorado law, "[i]f the insurer fails to discharge its duty [to offer enhanced coverage] prior to the issuance of the policy, the duty continues and can be discharged . . . by an adequate notification and offer on some future occasion." *Parfrey*, 830 P.2d at 912. Because Ms. Reid purchased her policy over the telephone, she obviously did not have the benefit of any written materials. But it is also undisputed that she received at least one written offer of enhanced PIP coverage on or before March 21, 2000. We hold that this offer discharged any continuing duty that GEICO might have had to provide a written explanation and offer of enhanced PIP coverage. *See id.*

We also hold, guided by the factors set forth in *Parfrey*, that GEICO's offer of enhanced PIP coverage was reasonably calculated to permit Ms. Reid to make an informed decision. The Option Form was in writing and clearly spelled out that "[h]igher limits of PIP coverage [were] available at [Ms. Reid's] option." Aplt. App. at 195. The form also explained the purposes of PIP coverage in general:

> Personal Injury Protection coverage (PIP) pays for reasonable and necessary medical expenses, rehabilitation expenses, loss of earnings, essential services and death benefits subject to a maximum if you have an accident, no matter who was at fault. Basic PIP benefits are required by law on all motor vehicles located in Colorado.

-12-

*Id.* at 194. Ms. Reid's options for enhanced PIP coverage were set forth, albeit briefly, in a cogent and understandable format that included the key information that a reasonable purchaser would need to make an informed decision. The Option Form explained what the aggregate dollar limit would be for each option, the amount of the work loss benefit, and how much additional premium Ms. Reid would have to pay. Despite this information, Ms. Reid claims that she did not understand her options with respect to enhanced PIP coverage. *Parfrey*, however, suggests that we look to the objective reasonableness of GEICO's offer, not the potential purchaser's subjective understanding. Indeed, none of the factors identified by the *Parfrey* court mention whether the insured actually understood the insurer's offer of coverage. *Cf. Leahy v. Guar. Nat'l Ins. Co.*, 907 P.2d 697, 700 (Colo. Ct. App. 1995) (explaining that "the reasonableness of an insurer's conduct [in a bad faith case] is measured by objective standards of conduct in the insurance industry."). In this case, the *Parfrey* factors weigh in favor of GEICO.

Finally, Ms. Reid contends that GEICO's offer was deficient for failing to provide a work loss benefit payable at less than the full amount of the injured person's average weekly income. For support, she points to language in § 10-4-710(2)(a)(II) requiring an insurer to offer "payment of benefits equivalent to eighty-five percent of loss of gross income per week." Ms. Reid, however, has failed to point to a single case holding that under these circumstances an insurer's

offer of enhanced PIP coverage must specify that work loss benefits are payable at the 85% level. And we can think of no reason to disagree with the district court's conclusion that such specificity is not required. *See* Aplt. App. at 919. We therefore reject this challenge to GEICO's offer and conclude based on the totality of the circumstances that GEICO's offer of enhanced PIP coverage to Ms. Reid was reasonable under *Parfrey*.

## C. Appropriateness of Reformation

Ms. Reid's final challenge to the district court's order concerns its determination that reformation of her insurance policy would be unconscionable in light of her explicit waiver of the work loss benefit. *See* Aplt. App. at 919 (stating that "[i]n practical terms, [Ms. Reid] is seeking a judgment requiring [GEICO] to pay unlimited PIP benefits to her after she elected to keep her premiums at the lowest level by disclaiming that she was employed."). Ms. Reid contends that this statement reveals the district court's improper assumption that she would not have purchased enhanced PIP coverage regardless of the adequacy of the offer. This argument, however, ignores the remainder of the district court's analysis and exaggerates the importance it placed on Ms. Reid's waiver of the work loss benefit. It is clear from the court's opinion that it rejected Ms. Reid's claim for reformation because it concluded that GEICO had made an adequate offer of enhanced PIP coverage, which Ms. Reid rejected. Neither its analysis nor its conclusion was erroneous.

-14-

"Generally, the purpose of reformation of an insurance contract is to make the policy express the true intent of the parties." *Thompson v. Budget Rent-A-Car*, 940 P.2d 987, 990 (Colo. Ct. App. 1996). Reformation is also required, however, when an offer of coverage fails to meet statutory requirements. Under those circumstances, "additional coverage in conformity with the required offer is incorporated into the agreement by operation of law." *Id.* Ms. Reid correctly observes that it is improper for a district court to speculate as to whether an insured would have purchased enhanced PIP coverage when such coverage was never offered. *See id.* (affirming reformation of policy and holding that "driver's after-the-fact statement that he would have refused the additional coverage if it had been offered [did] not require a different result."). But in her case, enhanced PIP coverage was offered and we have already upheld the sufficiency of the offer under the No-Fault Act. Under these circumstances, reformation is not available.

The judgment of the district court is AFFIRMED.