**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**October 18, 2007**

**Elisabeth A. Shumaker**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**

---

DELORES CAMPBELL,

  Plaintiff-Appellant,

v.

ALLSTATE INSURANCE
COMPANY, an Illinois corporation,

  Defendant-Appellee.

No. 07-1104
(D.C. No. 05-cv-01757-WDM-CBS)
(D. Colo.)

---

**ORDER AND JUDGMENT**[*]

---

Before **HOLMES**, **HOLLOWAY**, and **SEYMOUR**, Circuit Judges.

---

This action is based on the now-repealed Colorado Auto Accident

Reparations Act ("No-Fault Act" or "CAARA").[1]  Plaintiff Delores Campbell was

injured in an automobile accident in July 2002, and she received basic personal

injury protection (PIP) benefits under an automobile insurance policy issued to

---

[*]    After examining the briefs and appellate record, this panel has determined unanimously that oral argument would not materially assist the determination of this appeal.  *See* Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G).  The case is therefore ordered submitted without oral argument.  This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel.  It may be cited, however, for its persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

[1]    The Colorado legislature repealed the No-Fault Act on July 1, 2003, and all citations herein are to the 2002 version of the statute.

her by defendant Allstate Insurance Company. Ms. Campbell filed this diversity action seeking reformation of the policy to include enhanced PIP benefits under Colo. Rev. Stat. § 10-4-710(2)(a), alleging that, while she did not purchase enhanced PIP coverage from Allstate, she was entitled to receive enhanced PIP benefits because Allstate's offer of such benefits did not comply with the No-Fault Act. Ms. Campbell also asserted causes of action against Allstate for breach of contract and bad faith. She is now appealing the order entered by the district court denying her motion for partial summary judgment and granting summary judgment in favor of Allstate. Exercising jurisdiction under 28 U.S.C. § 1291, we affirm.

## A. Governing Law and Standard of Review.

"In diversity cases like this one, the substantive law of the forum state governs the analysis of the underlying claims, but we are governed by federal law in determining the propriety of the district court's grant of summary judgment." *Hill v. Allstate Ins. Co.*, 479 F.3d 735, 739 (10th Cir. 2007) (quotation omitted). "We review the grant of summary judgment de novo, applying the same standard as the district court pursuant to Rule 56(c) of the Federal Rules of Civil Procedure." *Gwinn v. Awmiller*, 354 F.3d 1211, 1215 (10th Cir. 2004). Under Rule 56(c), summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if

any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c).

### B.  Colorado's No-Fault Act.

The Colorado legislature enacted the No-Fault Act in 1973 "with the purpose of avoiding inadequate compensation to all victims of automobile accidents." *Reid v. GEICO Gen. Ins. Co.*, __ F.3d __, 2007 WL 2405254, at *1 (10th Cir. Aug. 24, 2007).  To accomplish this purpose, the Act "required complying automobile insurance policies to include certain minimum or basic [PIP] benefits to compensate injured persons for medical expenses and lost wages." *Id.*  Colo. Rev. Stat. § 10-4-706(1) sets forth the terms of the basic PIP coverages required under the No-Fault Act, and "[s]ection 10-4-707 delineates the categories of people who must receive [basic] coverage under § 706 as including '1) the named insured, 2) resident relatives of the named insured, 3) passengers occupying the insured's vehicle with the consent of the insured, and 4) pedestrians who are injured by the covered vehicle.'"  *Hill*, 479 F.3d at 737 (quoting *Brennan v. Farmers Alliance Mut. Ins. Co.*, 961 P.2d 550, 553 (Colo. Ct. App. 1998)).

"The No-Fault Act also required every insurance company to offer optional extended PIP benefits to its insureds, in exchange for higher premiums." *Id.* Specifically, the Act provided as follows:

Every insurer shall offer the following enhanced benefits for inclusion in a complying policy, in addition to the basic coverages described in section 10-4-706, at the option of the named insured:

(I) Compensation of all expenses of the type described in section 10-4-706(1)(b) without dollar or time limitation; or

(II) Compensation of all expenses of the type described in section 10-4-706(1)(b) without dollar or time limitations and payment of benefits equivalent to eighty-five percent of loss of gross income per week from work the injured person would have performed had such injured person not been injured during the period commencing on the day after the date of the accident without dollar or time limitations.

Colo. Rev. Stat. § 10-4-710(2)(a); *see also Soto v. Progressive Mountain Ins. Co.*, __ P.3d __, 2007 WL 2128189, at *4 (Colo. Ct. App. July 26, 2007) (holding that No-Fault Act required insurers to offer, as alternative choices, both of the enhanced PIP coverages described in subsections I and II of § 710(2)(a)).

"Although § 710 does not specify to whom the extended coverages it provides applies, [the Colorado Court of Appeals held in] *Brennan* that they apply to the same four categories of individuals to whom § 706 [basic] coverage applies." *Hill*, 479 F.3d at 737. Thus, as we recently noted in *Hill*, "*Brennan* alerted all automobile insurance carriers that extended PIP benefits for pedestrians must be offered under § 710." *Id.* at 737 n.3. In *Hill*, we also summarized the Colorado Court of Appeals' substantive holding in *Brennan*, noting that:

> The Colorado Court of Appeals held in *Brennan* that "when . . . an insurer fails to offer the insured optional coverage that satisfies [CAARA], additional coverage in conformity with the offer

-4-

mandated by statute will be incorporated into the policy." *Brennan*, 961 P.2d at 554 . . . . Thus, in *Brennan*, because the insurance policy at issue failed to offer extended PIP benefits for injured pedestrians and the court determined that the No-Fault Act mandated coverage for such pedestrians, the court ordered the policy reformed to include such coverage. *See Clark v. State Farm Mut. Auto. Ins. Co.*, 433 F.3d 703, 710 (10th Cir. 2005) (*Clark III*) ("*Brennan* . . . reformed those insurance policies to include extended pedestrian coverage that insurers should have offered under section 710.").

*Hill,* 479 F.3d at 737 (first ellipsis and alteration in original).

Our decision in *Hill* also sets forth the test for determining whether an insurer has fulfilled its duty under § 710 to offer optional enhanced PIP coverage. As we explained:

> In an unpublished decision, our court, in determining whether the insurer had fulfilled its duty to offer optional extended PIP coverage under § 710, applied the test set out by the Colorado Supreme Court in *Allstate Ins. Co. v. Parfrey*, 830 P.2d 905, 913 (Colo. 1992). *Johnson v. State Farm Mut. Auto. Ins. Co.*, 158 Fed. Appx. 119 (10th Cir. 2005) (unpublished). . . . [W]e take this opportunity to adopt and publish the following language . . . from [that] unpublished decision. In analyzing "the nature and scope of an insured's duty" the Colorado Supreme Court "determined that the insurer must perform its duty of notification 'in a manner reasonably calculated to permit the insured to make an informed decision on whether to purchase coverage higher than the minimum statutory liability limits.'" *Johnson*, 158 Fed. Appx. at 121 (quoting *Parfrey*, 830 P.2d at 913). . . .
>
> . . . "In the final analysis," the sufficiency of the offer "must be resolved under the totality of the circumstances." [*Parfrey*, 830 P.2d] at 914.

*Hill*, 479 F.3d at 742 (alterations omitted from *Johnson* quote); *see also Munger v. Farmers Ins. Exch.*, __ P.3d __, 2007 WL 2003001, at *2 (Colo. Ct. App.

-5-

July 12, 2007) ("Although *Parfrey* addressed [uninsured/underinsured motorist]

coverage, . . . its analysis is equally applicable to offers of enhanced PIP

coverage.").

**C. Allstate's Policy Documents and the District Court's Order.**

As summarized by the district court in its summary judgment order,

Allstate made the following disclosures to Ms. Campbell in connection with the

purchase of her policy:

> Plaintiff purchased her policy from an Allstate agent in
> October 1999. Around that time, she signed a Colorado PIP
> Disclosure Form which outlined the basic and enhanced PIP options
> available to her. The Disclosure Form provided that "[Allstate] also
> offers various additional PIP options which provide increased
> coverage for Medical Expenses, Work Loss and Essential Services"
> and contained a chart setting forth the eight options for enhanced PIP
> benefits. Plaintiff does not dispute that her signature appears on the
> Disclosure Form. Plaintiff then received a copy of her policy, which
> included a section on "ADDITIONAL PERSONAL INJURY
> PROTECTION" and set forth the eight different types of enhanced
> PIP coverage available. The policy provided that Allstate would pay
> basic and additional PIP benefits to an "injured person" in
> accordance with CAARA. The policy defined "injured person" for
> enhanced PIP benefits as "you or a resident relative who sustains
> bodily injury . . . ." However, the policy does not contain any
> exclusions for pedestrians or non-resident passengers and Allstate's
> claims practice since 1998 has been to pay PIP benefits to
> pedestrians and non-resident passengers as required by CAARA.

> Allstate also mailed a policy renewal package to Plaintiff in
> September 2001, which contained Form X67009. The form is
> entitled "Important Notice - A Reminder for You" and recites: "We
> want to make sure you know that Allstate offers options to purchase
> Additional Personal Injury Protection (PIP) benefits on your Allstate
> auto policy. . . . The average price associated with purchasing
> Additional PIP options is around $77* . . . . There are eight separate

-6-

coverage options that are available to choose from." The information includes an explanation of the advantages of purchasing enhanced benefits. The form refers the customer to the descriptions of the options contained in the policy and directs the customer to contact an agent or a main customer service telephone number for questions. Plaintiff does not dispute that she received this form. Plaintiff also does not dispute that she received another form, [Form X5188] sent to her in . . . September 2001, and March 2002, which included the statement, "Optional personal injury protection coverages are also available."

*Campbell v. Allstate Ins. Co.*, 2007 WL 505735, at *1 (D. Colo. Feb. 14, 2007) (last ellipsis added).

After noting that Allstate was "mov[ing] for summary judgment, arguing that the undisputed facts demonstrate that it made several offers to plaintiff for the purchase of additional PIP coverage and therefore complied with CAARA," and that Ms. Campbell was moving for partial summary judgment "on the threshold issue of whether Allstate's policy complied with CAARA," *id.* at *2, the district court concluded that: (1) Allstate's offers were adequate; and (2) the policy complied with the No-Fault Act. The district court's reasoning was as follows:

I conclude that Allstate's several offers of additional PIP coverage satisfied the requirements of C.R.S. § 10-4-710. Allstate offered eight options for enhanced PIP benefits, designated VB01 to VB08. VB01 provided benefits for medical expenses and work loss coverage compliant with C.R.S. § 10-4-710(2)(a)(II). Option VB02 provided benefits for medical expenses compliant with C.R.S. § 10-4-710(2)(a)(I). The Colorado PIP Disclosure Form, signed by Plaintiff, explains these coverages in writing in a manner sufficient to permit Plaintiff to make an informed decision on whether to purchase the enhanced coverage. This offer was then repeated

-7-

several times with the information contained in Plaintiff's policy and in form X67009.

Plaintiff argues, however, that the offer was not sufficient because the underlying PIP policy extends only to named insureds and resident relatives in violation of CAARA, which requires that PIP benefits also cover pedestrian[s] and guest occupants. *See Brennan*, 961 P.2d at 553-54; C.R.S. § 10-4-707(1) (2002). I disagree. The policy itself sets forth that Allstate would pay basic and additional PIP benefits to an "injured person" in accordance with CAARA, which includes all those protected by the statute. Plaintiff has presented no evidence that Allstate in fact has not done so. Moreover, . . . nothing in CAARA requires that the types of persons covered be specified in an offer of enhanced PIP coverage. . . . Unlike the policies in *Brennan* and *Clark v. State Farm Mutual Automobile Ins. Co.*, 319 F.3d 1234 (10th Cir. 2003) and *Clark v. State Farm Mutual Automobile Ins. Co.*, 433 F.3d 703 (10th Cir. 2005), which contained specific policy *exclusions* concerning pedestrians, the policy here is silent on the question of coverage to injured persons other than those listed. Accordingly, I do not agree that the policy itself did not comply with CAARA.

*Id.* at *3.

In sum, the district court concluded that Ms. Campbell was not entitled to have her policy reformed to provide for enhanced PIP benefits. Because the court agreed with Allstate that Ms. Campbell's "other claims all rest upon a finding that the policy should be reformed to include enhanced PIP benefits," *id.* at *4, the court concluded that those claims "also fail as a matter of law,"[2] *id.* The court

---

[2]    In this appeal, Ms. Campbell has not challenged the district court's conclusion that her other claims are inextricably linked to her reformation claim. As a result, our analysis will focus exclusively on the question of reformation.

therefore entered summary judgment in favor of Allstate on all of Ms. Campbell's claims.

**D. Analysis and Application of This Court's Decision in *Hill*.**

In this appeal, Ms. Campbell argues that the district court erred in concluding that: (1) Allstate's offer of enhanced PIP coverage was sufficient to allow her to make an informed decision on whether to purchase such coverage;[3] and (2) Allstate's policy complied with the No-Fault Act even though the basic PIP description in the policy did not explicitly state that it covered pedestrians and the enhanced PIP description did not explicitly state that it covered pedestrians and non-resident relative passengers. In light of our decision in *Hill*, we conclude that the district court correctly decided both of these issues.[4]

First, in *Hill*, another panel of this court reviewed the same Allstate policy and renewal documents that are at issue in this case. *See Hill*, 479 F.3d at

---

[3]    Allstate has argued with some force that Ms. Campbell waived this issue because she failed to challenge the adequacy of Allstate's offer in her summary judgment pleadings. *See* Aplee. Br. at 2-3 & n.2, 11, 13-14. We note, however, that the district court addressed the merits of the *Parfrey* issue in its summary judgment order. *See Campbell*, 2007 WL 505735 at *2-3. Following the lead of the district court, we will likewise overlook any potential waiver of the issue.

[4]    Although we did not decide *Hill* until after the district court entered its summary judgment order, it is binding precedent for purposes of this appeal. *See Sec. and Exch. Comm'n v. Mick Stack Assocs., Inc.*, 675 F.2d 1148, 1149 (10th Cir. 1982) ("[T]he general rule requires that the appellate court apply the law in effect at the time the appeal is to be decided, so long as manifest injustice does not occur.").

742-43.  The panel held that, even if "there were specific arguably ambiguous phrases and/or wordings in the various documents," *id.* at 743, it was "impossible to conclude" that an insured would be "unable to make a reasonably informed decision not to purchase the extended PIP coverage," *id.*  This reasoning is equally applicable to this case.  Moreover, although there are certain factual differences between *Hill* and this case (specifically, unlike in *Hill*, *id.* at 742-43, there is no evidence that an Allstate agent *orally* explained to Ms. Campbell the available options for enhanced PIP coverage at the time she purchased her policy), we believe the documents that Allstate provided to Ms. Campbell were sufficient to satisfy its obligations under *Parfrey*.

Second, in *Hill*, the panel unequivocally rejected Ms. Campbell's argument that Allstate's offer of enhanced PIP coverage was invalid because the underlying policy did not comply with the No-Fault Act.  Further, like the district court in its summary judgment order, the panel distinguished *Brennan* and this court's *Clark* decisions, and its reasoning fully disposes of this appeal:

> As indicated, § 710 states that an insurer "shall offer" enhanced PIP benefits for inclusion in a complying insurance policy. Hill argues that the policy Allstate issued to the Pauls was not a complying policy under the No-Fault Act because it failed to explicitly state that pedestrians are eligible for minimum PIP benefits, or that pedestrians and non-resident relative passengers are eligible for extended PIP benefits.  Allstate [argues in response that] it is not necessary for a policy to specifically list the types of persons covered by PIP benefits and enhanced PIP benefits[.] . . .  We agree with Allstate's . . . argument[.] . . .

-10-

As Allstate points out, the No-Fault Act does not require insurance carriers to specifically list those categories of eligible injured persons. It requires insurance carriers to provide basic PIP and offer extended PIP benefits. The Act further certainly mandates *coverage* for those categories of eligible injured persons, including pedestrians and non-resident relative passengers, but it does not affirmatively require that they be enumerated in every policy. . . .

Furthermore, Allstate's policy explicitly stated it would provide benefits in accordance with the Act, which includes providing coverage for pedestrians and non-resident relative passengers. There is no allegation that Allstate refused to provide coverage for an eligible pedestrian or non-resident passenger. That is what distinguishes this case from those in which the court has required reformation. As Allstate points out, *Brennan* and our *Clark* decisions involved pedestrians who were expressly denied coverage by an insurance carrier. In such a case, reformation was required because it was absolutely clear that the injured person, a pedestrian, had been denied coverage to which he was entitled and that such coverage had clearly not been offered to the insured. The Pauls *were* offered extended PIP benefits covering persons eligible to receive benefits under the No-Fault Act. They specifically chose to purchase only the basic PIP benefits. Reformation of the contract is not required where the claimed violation of the No-Fault Act was the failure to expressly enumerate all the parties eligible to receive PIP benefits, as opposed to the failure to offer those benefits and the subsequent failure to provide coverage.

*Id.* at 740-41 (footnote omitted).

Like *Hill*, this case does not involve a third-party pedestrian or passenger who is seeking PIP coverage for injuries sustained in an automobile accident with a person who is insured by Allstate. Instead, Ms. Campbell is the named insured in the Allstate policy, and she is seeking enhanced PIP coverage for injuries that *she* sustained in an automobile accident. In addition, just as in *Hill*,

Ms. Campbell's policy expressly states that Allstate will pay PIP benefits in accordance with Colorado's No-Fault Act, *see* Aplt. Appx., Vol. I at 308-09, 313-14, and there is no evidence in the summary judgment record indicating that Allstate has refused to pay basic or enhanced PIP benefits to an injured pedestrian or non-resident relative passenger at any time since Ms. Campbell purchased her policy. Consequently, Ms. Campbell's attempts to distinguish *Hill* are to no avail, and we must affirm the grant of summary judgment to Allstate.

As another panel of this court just recently pointed out in *Stickley v. State Farm Mut. Auto. Ins. Co.*, __ F.3d __, 2007 WL 2938380 (10th Cir. Oct. 10, 2007), we would reach this same result even if the Allstate policy and renewal documents could be construed as excluding enhanced PIP coverage for pedestrians and non-resident relative passengers. As we explained in *Stickley*:

> To the extent Stickley is arguing the former pedestrian limitation automatically entitles him to the fullest amount of benefits possible for all categories of insureds, even those categories unrelated to the defect, he is incorrect. The plaintiff in *Brennan* was an injured pedestrian. 961 P.2d at 352. The driver had purchased enhanced PIP benefits, but the policy excluded pedestrians from receiving those benefits. *Id.* The Colorado Court of Appeals interpreted CAARA to require insurance companies to offer enhanced PIP benefits that covered pedestrians in addition to the other categories of people listed in § 707(1). *Id.* In the end, it agreed with the trial court that the policy should be reformed to provide enhanced benefits to pedestrians. *Id.* at 554. It did not, however, order reformation of the entire policy to provide enhanced PIP benefits for all categories of people.
>
> Thus, . . . reformation of [Stickley's] insurance contract to include the highest possible PIP benefits for pedestrians would not

benefit him. Stickley was not a pedestrian and therefore would not receive additional benefits as a result of reformation based on that pedestrian limitation.

*Id.* at *7-8. Although, following *Hill*, we have construed the Allstate policy and renewal documents as offering enhanced PIP coverage for all persons eligible to receive such benefits under the No-Fault Act, *see Hill*, 479 F.3d at 740-41, the reasoning in *Stickley* is equally applicable here since Ms. Campbell is neither a pedestrian nor a non-resident relative passenger.

We note that the parties have devoted a good portion of their arguments to our unpublished decision in *Johnson v. Hartford Underwriters Ins. Co.*, 2007 WL 1830750 (10th Cir. June 27, 2007). We also note that, in a letter to this court dated September 18, 2007, Ms. Campbell argues that our recent decision in *Reid* "is expressly contrary to the holding in *Clark v. State Farm Mutual Auto Insurance Company*, 433 F.3d 703, 710 (10th Cir. 2005) ('the type of policy offered to Mrs. Madrid does not satisfy subsection 710(2)(a) of CAARA'), and several state law decisions." Neither *Johnson* nor *Reid* dictate a different result in this case than the one we have reached following *Hill*. In fact, the opposite is true as both cases state, as a general proposition, that the focus of our inquiry in cases such as this one must be on the *offer* of enhanced PIP coverage, and not on the *coverage terms* in the underlying policy, and this approach would appear to eliminate altogether Ms. Campbell's argument that the policy terms here did not comply with Colorado law. *See Johnson*, 2007 WL 1830750, at *2; *Reid*,

-13-

2007 WL 2405254, at *3.  We also reject Ms. Campbell's assertion that *Reid* is inconsistent with our *Clark* decisions and the Colorado Court of Appeals' decision in *Brennan*.  As fully explained by the panel in *Hill*, those cases are distinguishable from the situation in this case.  *See Hill*, 479 F.3d at 740-41.

Finally, our disposition of this case is likewise not affected by the Colorado Court of Appeals' recent decision in *Munger*, 2007 WL 2003001, at *3-4 (applying *Parfrey* and holding that two written statements sent by insurer to insured did not provide adequate offer of enhanced PIP coverage for purposes of No-Fault Act).  To the contrary, we agree with Allstate that the holding in *Munger* is not relevant to this case.  As Allstate has pointed out, *Munger* involved only "two one-line mailings regarding extended PIP coverage" whereas this case involved "a face-to-face meeting, a PIP Disclosure Form that broke down each extended PIP option in a comprehensible chart format, a policy that devoted eight pages to explaining the different extended PIP coverage options available for purchase, Form X67009 mailed to Plaintiff at least twice, and Form X5188 mailed to Plaintiff at least three times."  Allstate's Reply in Support of Motion for Attorneys' Fees, Double Costs, and Sanctions at 7 (emphasis removed).

## CONCLUSION

For the reasons set forth herein, the judgment of the district court is **AFFIRMED**.  Although we have determined that Ms. Campbell's claims ultimately fail under *Hill*, we agree with Ms. Campbell that "[t]here is nothing to

-14-

indicate that [her] pleadings in this Court were frivolous or violated any applicable rules or statute. Rather, [she] has made a good faith attempt to enforce her legal rights in the face of a rapidly changing legal landscape, addressing the uncertainties and conflicts that have arisen with recent decisions." Appellant's Response to Allstate's Motion for Attorneys' Fees, Double Costs, and Sanctions at 2. We therefore **DENY** Allstate's Motion for Attorneys' Fees, Double Costs, and Sanctions. Because: (1) *Hill* decided the question of state law that Ms. Campbell wants certified to the Colorado Supreme Court; (2) we are bound by the precedent established by the panel of this court that decided *Hill*; and (3) there has been no intervening state court decisions calling *Hill* into question, we **DENY** Ms. Campbell's Motion for Certification of a Question of State Law. *See Wankier v. Crown Equip. Corp.,* 353 F.3d 862, 867 (10th Cir. 2003) ("Following the doctrine of stare decisis, one panel of this court must follow a prior panel's interpretation of state law, absent a supervening declaration to the contrary by that state's courts or an intervening change in the state's law.") (quotation omitted).

Entered for the Court

William J. Holloway, Jr.
Circuit Judge