**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**January 8, 2008**

**Elisabeth A. Shumaker**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**

PATRICK WOBST,

      Plaintiff-Counter-
      Defendant-Appellant,

v.

ALLSTATE INSURANCE
COMPANY, an Illinois corporation,

      Defendant-Counter-
      Claimant-Appellee.

No. 07-1172
(D.C. No. 05-cv-1259-MSK-PAC)
(D. Colo.)

**ORDER AND JUDGMENT**[*]

Before **KELLY**, **PORFILIO**, and **ANDERSON**, Circuit Judges.

This action is the latest in a long line of cases to reach this court based on

the now-repealed Colorado Auto Accident Reparations Act ("No Fault Act" or

"Act"), Colo. Rev. Stat. §§ 10-4-701 to 726 (repealed 2003). Plaintiff Patrick

Wobst was injured in a car accident in August 2002 and received basic personal

---

[*]    After examining the briefs and appellate record, this panel has determined
unanimously that oral argument would not materially assist the determination of
this appeal. *See* Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G). The case is
therefore ordered submitted without oral argument. This order and judgment is
not binding precedent, except under the doctrines of law of the case, res judicata,
and collateral estoppel. It may be cited, however, for its persuasive value
consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

injury protection ("PIP") benefits under an automobile insurance policy issued to his parents by defendant Allstate Insurance Company ("Allstate"). He filed this diversity action, seeking reformation of the policy to include enhanced PIP benefits under the No Fault Act, alleging that Allstate failed to make an adequate offer of such coverage in compliance with section 10-4-710(2)(a). He also asserted derivative claims for breach of contract and bad faith. On cross-motions for summary judgment, the district court concluded that Allstate made a statutorily-compliant offer of coverage and was therefore entitled to judgment as a matter of law on Mr. Wobst's reformation claim and dismissal of the derivative claims. Mr. Wobst appeals, and we affirm.

## I. Background

Enacted in 1973, the No Fault Act "required complying automobile insurance policies to include certain minimum or basic [PIP] benefits to compensate injured persons for medical expenses and lost wages resulting from an automobile accident." *Reid v. GEICO Gen. Ins. Co.*, 499 F.3d 1163, 1165 (10th Cir. 2007). The Act also required insurance companies to offer optional enhanced PIP coverage in exchange for higher premiums. Section 10-4-710(2)(a) provided:

> Every insurer shall offer for inclusion in a complying policy, in
> addition to the coverages described in section 10-4-706 [governing
> basic PIP], at the option of the named insured:

(I) Compensation of all expenses of the type described in section 10-4-706(1)(b)[1] without dollar or time limitation; or

(II) Compensation of all expenses of the type described in section 10-4-706(1)(b) without dollar or time limitations and payment of benefits equivalent to eighty-five percent of loss of gross income per week from work the injured person would have performed had such injured person not been injured during the period commencing on the day after the date of the accident without dollar or time limitations.

Mr. Wobst's parents, Christine and Douglas Wobst, purchased the relevant insurance policy from Allstate in 1986 and renewed it regularly throughout the relevant time period. Mrs. Wobst took the lead in purchasing the original policy and making necessary changes to it over the years, frequently meeting with her Allstate agent in person. It is undisputed that the Wobsts never elected or paid for any enhanced PIP coverage. According to Mrs. Wobst's deposition testimony, she could not recall specifically whether an Allstate representative ever explained her options with respect to enhanced PIP.

Two Allstate representatives, William Argys and June Charron, also testified by deposition. Both of them claim to have explained to Mrs. Wobst in person her options with respect to enhanced PIP coverage. Specifically, the agents claim that on several occasions before 2002, they met with Mrs. Wobst incident to her making changes to her insurance policy. They testified that it was their practice, when going over policy changes with a client, to use the Alstar

---

[1] This section governed an insurer's duty to offer minimum coverage for reasonable and necessary medical expenses.

program, Allstate's computerized instructions system. According to Mr. Argys, "[t]hese instructions went into detail on PIP, including basic coverage and additional PIP coverage." Aplt. App. at 396. He further testified that "[t]he computerized instructions would not advance screens without [the Allstate agent] filling in required choices that had to be made by the insured regarding the offered coverages, including additional PIP coverages." *Id.* Both agents testified unequivocally that they offered enhanced PIP coverage to Ms. Wobst but that she repeatedly declined such coverage to keep her insurance premiums down. Ms. Charron specifically recalled meeting with Mrs. Wobst in April 2002 and offering Allstate's enhanced PIP coverage.

Although Mrs. Wobst claims not to recall these verbal offers of enhanced PIP coverage, the Wobsts concede that Allstate sent them several documents over the years that described or referenced such coverage. The automobile policy itself, the latest copy of which was dated December 28, 1998, contained a detailed description of Allstate's eight options for enhanced PIP coverage. In addition, from May 1995 to May 2002, Allstate mailed at least five notices to the Wobsts reminding them of their enhanced PIP coverage options. Two of these notices, sent in November 2001 and May 2002, specifically advised the Wobsts that Allstate offered eight options for enhanced PIP benefits that would provide increased coverage for medical expenses, work loss, and essential services in the event of a serious injury-causing accident. The notices referred the Wobsts to

their insurance policy for details and asked them to contact their Allstate agent if they had any questions about, or wished to purchase, enhanced PIP coverage.

Following his accident in 2002, Mr. Wobst quickly exhausted his basic PIP benefits. He then sued Allstate, seeking the maximum amount of enhanced PIP benefits set forth in the No Fault Act. He alleged that Allstate violated the Act because at the time his parents purchased the policy, Allstate did not even have statutorily-compliant coverage available. He also alleged, more generally, that the insurer failed to make an offer of enhanced PIP coverage in a manner reasonably calculated to permit his parents to make an informed decision as to whether to purchase such coverage. The complaint sought "a declaration that enhanced PIP coverages, identified in Colo. Rev. Stat. § 10-4-710, were auto-incorporated as of the date of issuance of the policy." Aplt. App. at 20. The district court rejected these claims and awarded summary judgment to Allstate.

III. Analysis

We review the district court's grant of summary judgment de novo, applying the standard set forth in Rule 56(c) of the Federal Rules of Civil Procedure and reviewing all facts in the light most favorable to the non-moving party. *Reid*, 499 F.3d at 1167. "In this diversity case, the laws of Colorado, the forum state, govern our analysis of the underlying claims while federal law determines the propriety of the district court's grant of summary judgment." *Id.*

Mr. Wobst makes three main arguments on appeal. First, he claims that Allstate's offer of enhanced PIP coverage was, as a matter of law, insufficient to permit his parents to make an informed decision as to whether to purchase such coverage. Second, he contends that certain inaccuracies in the Alstar program and Allstate's written notices concerning its enhanced PIP coverage should have foreclosed any finding that Allstate's offer complied with the Act. And last, he argues that this court's recent precedent establishes his right to reformation because Allstate conceded that it did not always provide the coverage mandated by the No Fault Act. We address each of these arguments in turn.

A. *Sufficiency of Allstate's Offer*

In support of his first argument, Mr. Wobst attempts to distinguish this case from *Hill v. Allstate Ins. Co.*, 479 F.3d 735 (10th Cir. 2007), upon which the district court largely relied in determining that Allstate's offer was sufficient under Colorado law. Like Mr. Wobst, the plaintiff in *Hill* complained that Allstate's explanation of its enhanced PIP options, provided both orally and in writing, was not sufficiently clear to enable the insured to make an informed decision. We rejected this argument, noting that not only had the insured discussed his options in person with an Allstate representative, but that he had also received numerous forms, identical to the forms in this case, reminding him of Allstate's enhanced PIP coverage. In addition, the insurance policy, like the policy at issue here, contained a detailed explanation of Allstate's enhanced PIP

-6-

coverage options. We explained that under Colorado law, "[i]n the final analysis, the sufficiency of the offer must be resolved under the totality of the circumstances." *Hill*, 479 F.3d at 742 (citing *Allstate Ins. Co. v. Parfrey*, 830 P.2d 905, 914 (Colo. 1992)) (quotations omitted). We reiterate that holding here. The No Fault Act did not require insurance companies to exhaustively explain every facet of enhanced PIP coverage and every conceivable scenario under which such coverage might be desirable. It "merely required that the insured be given enough information to advise the insured of the availability of coverage and permit a reasonably informed decision on whether to purchase it." *Id.* at 742-43 (quotation omitted).

We agree with the district court that the facts of this case mandated summary judgment in favor of Allstate. Mr. Wobst argues repeatedly that his case is different from *Hill* because there is no conclusive evidence that an Allstate representative met with his mother in person to explain the enhanced PIP options. But we have already held that a face-to-face meeting is not required in order for an offer to be found in compliance with the No Fault Act. *See Reid*, 499 F.3d at 1165, 1169 (upholding sufficiency of offer where policy was purchased over the telephone and subsequent offer was made in writing); *see also Jewett v. Amer. Standard Ins. Co.*, No. 06CA1523, ___ P.3d ___, 2007 WL 3025286, at *4 (Colo. Ct. App. Oct. 18, 2007) (upholding sufficiency of enhanced PIP offer even

though insurance policy was purchased over the telephone "where [additional] PIP may or may not have been fully discussed").

We also reject Mr. Wobst's argument attacking the sufficiency of Allstate's offer based on the four-year time lapse between when his parents last received a copy of their policy and the date of the accident. We fail to see the relevance of this point since the Wobsts conceded (1) that they had in their possession a policy that explained Allstate's enhanced PIP coverage options; and (2) that they received multiple notices between 1998 and 2002, which reminded them of such coverage and referred them to their policy. Simply put, the mere fact that Allstate last sent a copy of the policy four years before Mr. Wobst's accident did not constitute a violation of the No Fault Act.

B. *Inaccuracies in the Alstar Program and Written Materials*

Mr. Wobst also takes issue with Allstate's representatives' use of the Alstar computer program to explain enhanced PIP coverage. He contends that the program itself created a fact issue as to whether Allstate's offer was sufficient because it was rife with inaccuracies. For example, he contends that it erroneously provided that Allstate's work-loss benefit under the enhanced PIP options was payable for only 52 weeks when the benefit was actually unlimited in duration. We are not persuaded, however, that the presence of such technical inaccuracies was sufficient to remove Allstate's offer from the realm of

reasonableness required under Colorado law. We reached this identical

conclusion in the face of very similar arguments in *Hill*:

> While Hill argues there were specific arguably ambiguous phrases
> and/or wordings in the various documents, it is impossible to
> conclude that, from all the above information, the [insureds] were
> unable to make a reasonably informed decision not to purchase the
> extended PIP coverage.

479 F.3d at 743. Notwithstanding the glitches in the Alstar program utilized in

this case or the other ambiguities that Mr. Wobst has identified in the policy

itself, we conclude that Allstate's offer of enhanced PIP satisfied the requirements

of *Parfrey*.

## C.  *Effect of Allstate's Coverage Before Brennan*

In 1998, the Colorado Court of Appeals held that extended PIP benefits

purchased pursuant to § 10-4-710 must include pedestrians among the category of

injured persons entitled to coverage. *Brennan v. Farmers Alliance Mut. Ins. Co.*,

961 P.2d 550, 552 (Colo. Ct. App. 1998). The court further held that "when . . .

an insurer fails to offer the insured optional coverage that satisfies the No-Fault

Act, additional coverage in conformity with the offer mandated by statute will be

incorporated into the policy." *Id.* at 554. After *Brennan*, Allstate, along with

other insurers, reformed its policies to include pedestrians as covered individuals

for purposes of enhanced PIP coverage. Allstate conceded in response to

Mr. Wobst's interrogatory requests that "following the decision in *Brennan*, [it]

changed its claims practices to pay appropriate benefits to eligible injured persons

as defined in the decision." Aplt. App. at 570. We recently clarified that reformation under *Brennan* and the No Fault Act is required when the insurer not only failed to offer the coverage mandated by the Act, but also subsequently denied coverage to which the injured person was clearly entitled. *Hill*, 479 F.3d at 740-41.

Mr. Wobst argues that he is entitled to reformation based on Allstate's concession that, in violation of the Act, it did not always pay enhanced PIP benefits to injured pedestrians. This argument fails for at least two reasons. First, it is immaterial to Mr. Wobst's claims whether Allstate violated the No Fault Act with respect to its policies issued before 1998. The policy under which he was insured expressly provided that, in the event of a conflict, coverage in compliance with "the minimum requirements of the law of the state [would] apply." Aplt. App. at 257. More importantly, his policy was reformed after *Brennan* to remove any limitations on the recovery of enhanced PIP benefits by pedestrians. Under these circumstances, we have held that reformation is simply unwarranted. *Stickley v. State Farm Mut. Auto. Ins. Co.*, 505 F.3d 1070, 1079-80 (10th Cir. 2007). Second, even if we were to conclude that Mr. Wobst's policy violated the No Fault Act, as we explained in *Stickley*, "only the defective portion of the policy [would be] reformed to comply with [the Act]." 505 F.3d at 1080; *see also Wilson v. Titan Indem. Co.*, No. 06-1431, ___F.3d ___, 2007 WL 4171598, at *2 (10th Cir. Nov. 27, 2007) (rejecting plaintiff's reformation claim

-10-

based on *Stickley*). We would not "wipe the slate clean and give [Mr. Wobst] the fullest amount of benefits available for every category possible." *Stickley*, 505 F.3d at 1080. Thus, putting aside the other problems with this argument, reformation of Mr. Wobst's insurance policy to include the highest possible PIP benefits for pedestrians still would not benefit him, as he is not claiming coverage as a pedestrian. Like the plaintiff in *Stickley*, "[t]he only defect [Mr. Wobst] can claim is that [his parents] [were] never offered enhanced PIP benefits at all." *Id.* We have already rejected this argument, however, having concluded that Allstate's offer satisfied the requirements of § 10-4-710(2)(a).

## IV. Conclusion

For the foregoing reasons the judgment of the district court is AFFIRMED. And for the same reasons we expressed in *Campbell v. Allstate Ins. Co.*, No. 07-1104, 2007 WL 3046304, *8 (10th Cir. Oct. 18, 2007) (unpublished), all pending motions, including Allstate's motion for fees and Mr. Wobst's motion for certification of a question of state law, are DENIED.

Entered for the Court


Paul J. Kelly, Jr.
Circuit Judge

-11-