**F I L E D**

PUBLISH

**March 6, 2007**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

SCOTT HILL, as Conservator of the
Estate of Katelyn Hill,

      Plaintiff - Appellant,

    v.

ALLSTATE INSURANCE
COMPANY,

      Defendant - Appellee.

No. 06-1134

---

**APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
(D.C. NO. 04-CV-865-REB-CBS)**

---

Robert B. Carey, Hagens Berman Sobol Shapiro, LLP, Phoenix, Arizona, for
Appellant.

Terence M. Ridley (John M. Vaught and LaMar F. Jost with him on the brief),
Wheeler Trigg Kennedy, LLP, Denver, Colorado, for Appellee.

---

Before **HENRY**, **ANDERSON**, and **HOLMES**, Circuit Judges.

---

**ANDERSON**, Circuit Judge.

---

Plaintiff and appellant Scott Hill, as conservator for the estate of his daughter, Katelyn Hill, who was injured in an automobile accident, appeals the following orders of the district court: one granting defendant Allstate Insurance Company's motion for partial summary judgment dated September 14, 2005, another granting Allstate's motion for summary judgment dated January 24, 2006, and the final judgment dismissing the case. The orders denied Hill's request to reform an automobile insurance contract to provide additional personal injury protection benefits for Katelyn, denied Hill's request for wage-loss benefits, and dismissed the case with prejudice. We affirm.[1]

## BACKGROUND

The Colorado legislature enacted the Colorado Auto Accident Reparations Act ("CAARA" or "No-Fault Act") in 1973. Among other things, the No-Fault Act "require[d] that a complying [automobile insurance] policy include mandatory [personal injury protection or "PIP"] benefits." Brennan v. Farmers Alliance Mut. Ins. Co., 961 P.2d 550, 552 (Colo. Ct. App. 1998). More specifically, Colo. Rev. Stat. § 10-4-706(1)[2] required an insurance company to provide:

---

[1]Simultaneously with this opinion, we are filing another case involving similar, but not identical, issues. See Padhiar v. State Farm Mut. Auto. Ins. Co., No. 06-1121, ___ WL ____ (March 6, 2007).

[2]The No-Fault Act was repealed in 2003.

(b)(I) Compensation without regard to fault, up to a limit of fifty thousand dollars per person for any one accident, for payment of all reasonable and necessary expenses for medical . . . and nonmedical remedial care and treatment . . . performed within five years after the accident for bodily injury arising out of the use or operation of a motor vehicle. . . .

(c)(I) Compensation without regard to fault up to a limit of fifty thousand dollars per person for any one accident within ten years after such accident for payment of the cost of rehabilitation procedures or treatment and rehabilitative occupational training necessary because of bodily injury arising out of the use or operation of a motor vehicle.

Furthermore, pursuant to § 10-4-706(4)(a), "[a]n insurer issuing policies providing coverages as set forth in this section shall provide written explanations of all available coverages prior to issuing any policy to an insured."

Section 10-4-707 delineates the categories of people who must receive coverage under § 706 as including "1) the named insured, 2) resident relatives of the named insured, 3) passengers occupying the insured's vehicle with the consent of the insured, and 4) pedestrians who are injured by the covered vehicle." Brennan, 961 P.2d at 553.

The No-Fault Act also required every insurance company to offer optional extended PIP benefits to its insureds, in exchange for higher premiums. Thus, § 10-4-710(2)(a) provided that:

Every insurer shall offer the following enhanced benefits for inclusion in a complying policy, in addition to the basic coverages described in section 10-4-706, at the option of the named insured: (I) Compensation of all expenses of the type described in section 10-4-706(1)(b) without dollar or time limitation;

-3-

(II) Compensation of all expenses of the type described in section 10-4-706(1)(b) without dollar or time limitations and payment of benefits equivalent to eighty-five percent of loss of gross income per week from work the injured person would have performed had such injured person not been injured during the period commencing on the day after the date of the accident without dollar or time limitations.

Colo. Rev. Stat. § 10-4-710(2)(a). Although § 710 does not specify to whom the extended coverages it provides applies, Brennan held that they apply to the same four categories of individuals to whom § 706 coverage applies.

The Colorado Court of Appeals held in Brennan that "when . . . an insurer fails to offer the insured optional coverage that satisfies [CAARA], additional coverage in conformity with the offer mandated by statute will be incorporated into the policy." Brennan, 961 P.2d at 554; see also Thompson v. Budget Rent-A-Car Sys., Inc., 940 P.2d 987, 990 (Colo. Ct. App. 1996) ("[W]hen a policy is violative of a statute, reformation is also required to assure that coverage will meet the statutory minimums."). Thus, in Brennan, because the insurance policy at issue failed to offer extended PIP benefits for injured pedestrians and the court determined that the No-Fault Act mandated coverage for such pedestrians, the court ordered the policy reformed to include such coverage. See Clark v. State Farm Mut. Auto. Ins. Co., 433 F.3d 703, 710 (10th Cir. 2005) (Clark III)

("Brennan and Thompson reformed those insurance policies to include extended pedestrian coverage that insurers should have offered under section 710.").[3]

The insurance policy at issue in this case was purchased by John Paul, who was then still married to, although legally separated from, Katelyn's mother, April Paul. He purchased the policy in August 2000 from the Marchand Agency, which was operated by Elizabeth Marchand. Christine Pitcher (formerly known as Christine Clifford) was a licensed agent at Marchand. Both Elizabeth Marchand and Pitcher testified as to their standard procedure for processing an insurance application from an individual. The procedure consisted of three phases—a quotation phase, an application phase and a signature phase. The agent would discuss the available coverages, including extended PIP coverages, in all three phases. The agent would also use Allstate's "Colorado PIP Disclosure," which described all extended PIP coverages, as a visual display of PIP coverages.

With respect to Paul's application, Pitcher testified she "recall[ed] money being an object. . . . [H]e wanted to go with the basic personal injury protection coverage." Appellant's App. Vol. II at 401. Pitcher further testified that she told him the aggregate limit of coverage for the extended PIP coverage was $200,000. Id. at 404. She testified that, after showing him the available extended PIP

---

[3]Brennan alerted all automobile insurance carriers that extended PIP benefits for pedestrians must be offered under § 710.

coverages, both on her computer screen and on the PIP Disclosure Form, she asked him if he wanted her to explain those in more detail and he declined. Paul purchased a policy with the mandatory minimum PIP coverage.

Allstate subsequently mailed to Paul his policy. It included a summary of the coverages he selected, including the basic PIP coverage. The policy specifically stated "Optional Personal Injury Protection coverages also are available." Id. at 425. Along with the policy Allstate mailed an "Important Notice" (Form X5188) which summarized the major coverages in the Pauls' policy and informed them that the PIP coverage "provides coverage for you, your passengers and pedestrians, who are injured in an automobile accident." Id. The policy also contained an eight-page description of the extended PIP coverages, including two options with unlimited medical coverage. The policy further provided that Allstate would pay basic and extended PIP benefits "in accordance with [CAARA] and subject to the limits as specified in the Limits of Liability provision." Id. at 439-40.

The Pauls renewed the policy every six months from August 2000 through September 2002.[4] On September 4, 2001, Allstate mailed them a renewal packet

---

[4]Allstate mailed all documents to John and April Paul. In fact, however, John and April Paul finalized their divorce in November 2000. April Paul then married plaintiff Scott Hill and took the name April Hill. Their daughter, Katelyn, was born in August 2001.

which included a form called "Important Notice – A Reminder for You" (Form

X67009), which stated in part:

> Allstate offers options to purchase Additional Personal Injury
> Protection (PIP) benefits on your Allstate auto policy.  These
> additional benefits might be very important to you or occupants of
> your insured auto if you are involved in a serious injury causing
> accident.  Allstate's Additional (PIP) options provide increased
> coverages for Medical Expenses, Work Loss and Essential
> Services. . . .
> The average[] price associated with purchasing Additional PIP
> options is around $77.  Your Price for Additional PIP coverage will
> vary based on your characteristics (e.g. driving record, geographic
> location, age), characteristics of the insured auto (e.g., passive
> restraint system, seat belts), and whether you are eligible for certain
> discounts or subject to certain surcharges. . . .
> There are eight separate coverage options that are available to choose
> from.  Please see your Colorado Automobile Policy for a full
> explanation of these options.  (A description of the eight options can
> be found under Additional Personal Injury, in the section titled
> "Limits of Liability".)  If you wish to purchase Additional Personal
> Injury Protection (Coverage V8) options or have any questions about
> your PIP benefits, or about any aspect of you insurance coverage,
> please feel free to contact your Allstate agent—or call the Allstate
> Customer Information Center at 1-800-ALLSTATE.

Id. at 486.  Allstate mailed the Pauls another renewal packet in March 2002,

which again included the above Notice (Form X67009).  The Pauls continued to

renew the policy with the minimum PIP coverage.

On July 25, 2002, April and Katelyn Hill were involved in a serious

automobile accident, in which April died and ten-month-old Katelyn was

seriously injured.  Allstate paid approximately $100,000 in basic PIP benefits to

Scott Hill for Katelyn's care.  When Allstate refused to make further payments,

Hill sued Allstate and Ms. Marchand in state court. He made various claims under CAARA and sought, *inter alia*, reformation of the insurance policy to require Allstate to pay extended PIP benefits to Katelyn, and damages for breach of contract and bad faith refusal to pay. Allstate removed the case to federal court on the basis of diversity of the parties. In December 2004, the district court dismissed: (1) Hill's claims for essential services under CAARA; (2) Hill's claims for lost wages on behalf of April Hill; (3) Hill's claims against Marchand because she had been fraudulently joined; and (4) Hill's claims asserted in an individual capacity.

In June 2005, co-defendant Merastar Insurance Company moved for partial summary judgment on Hill's lost-wage claim on behalf of Katelyn under CAARA. The district court granted Merastar's motion. Allstate thereafter joined Merastar's motion, incorporating Merastar's undisputed facts and arguments. The court then granted Allstate's motion.

Allstate then filed a motion for summary judgment on Hill's claims for reformation, breach of contract, and bad faith. Hill filed a cross-motion for summary judgment arguing, *inter alia*, that Allstate had failed, as a matter of law, to make an adequate offer of enhanced PIP benefits under CAARA. The district court granted Allstate's motion, concluding (1) "as a matter of law that Allstate's offer of [enhanced PIP] coverage to Paul complied with the requirements of

§ 10-4-710;" (2) "as a matter of law that the Allstate policy documents provide the coverages required by the No-Fault Act[;] [t]herefore, Hill's claim that Allstate's offer of [enhanced PIP] coverages was faulty because Allstate's policy was faulty must fail." Order at 12-13, Appellant's App. Vol. III at 814-15. Because Hill's breach of contract and bad faith claims depended upon the reformation of the insurance policy, the district court dismissed them after concluding that the policy would not be reformed.

Hill appeals, arguing the district court erred in holding: (1) that an offer of enhanced PIP benefits complied with the No-Fault Act even though the basic PIP description in the policy did not explicitly state that it covered pedestrians and the enhanced PIP description did not explicitly state that it covered pedestrians or non-resident relative passengers; (2) an offer of enhanced PIP benefits complied with the No-Fault Act despite omissions and misstatements in the oral and written representations and materials concerning such benefits; (3) Katelyn's wage-loss claim must be dismissed; and (4) the policy contains an aggregate limit even though the policy contains no specific written limit.

## DISCUSSION

In diversity cases like this one, the substantive law of the forum state governs the analysis of the underlying claims, "but we are governed by federal

law in determining the propriety of the district court's grant of summary judgment." Eck v. Parke, Davis & Co., 256 F.3d 1013, 1016 (10th Cir. 2001). Accordingly, "[w]e review the grant of summary judgment de novo, applying the same standard as the district court pursuant to Rule 56(c) of the Federal Rules of Civil Procedure." Gwinn v. Awmiller, 354 F.3d 1211, 1215 (10th Cir. 2004). "Summary judgment is appropriate if 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.'" Id. (quoting Fed. R. Civ. P. 56(c)). We examine the record in the light most favorable to the non-moving party.

## I. Failure to enumerate pedestrians/non-resident passengers

As indicated, § 710 states that an insurer "shall offer" enhanced PIP benefits for inclusion in a complying insurance policy. Hill argues that the policy Allstate issued to the Pauls was not a complying policy under the No-Fault Act because it failed to explicitly state that pedestrians are eligible for minimum PIP benefits, or that pedestrians and non-resident relative passengers are eligible for extended PIP benefits. Allstate responds with two arguments: first, it is not necessary for a policy to specifically list the types of persons covered by PIP benefits and enhanced PIP benefits; and second, Hill lacks standing to complain

about the alleged failure to specifically define pedestrians and/or non-resident relative passengers as beneficiaries because Katelyn, the individual on whose behalf he seeks additional benefits, was neither. We agree with Allstate's first argument and, as to the second, we conclude that Hill has standing because, in this particular case, the complaint is explicitly framed as a contract/tort action, which raises the factual question of whether he was offered a compliant policy.[5]

As Allstate points out, the No-Fault Act does not require insurance carriers to specifically list those categories of eligible injured persons. It requires insurance carriers to provide basic PIP and offer extended PIP benefits. The Act further certainly mandates *coverage* for those categories of eligible injured persons, including pedestrians and non-resident relative passengers, but it does not affirmatively require that they be enumerated in every policy. See Calderon v. State Farm Mut. Auto. Ins. Co., 2005 WL 2304735, at *4 (D. Colo. Sept. 21, 2005) (finding "as a matter of law that § 10-4-710 . . . did not require State Farm to list the types of persons who were covered by PIP and [enhanced] PIP coverages, including pedestrians, when it offered [enhanced] PIP coverages to its insureds"); Sigala v. Hartford Underwriters Ins. Co., 2005 WL 2098141, at * 6

---

[5]We note, however, that several courts have held that a non-pedestrian such as Hill, on behalf of Katelyn, lacks standing to seek reformation on the ground that coverage of pedestrians was allegedly not offered. See Reid v. Geico Gen. Ins. Co., 2006 WL 2844381, at *3 (D. Colo. Oct. 2, 2006); Wilson v. Titan Indem. Co., 2006 WL 2583133, at **1-2 (D. Colo. Sept. 6, 2006).

(D. Colo. Aug. 29, 2005) (rejecting argument that reformation was required "because the Hartford policy failed to include [enhanced] PIP benefits for non-family occupants and pedestrians").

Furthermore, Allstate's policy explicitly stated it would provide benefits in accordance with the Act, which includes providing coverage for pedestrians and non-resident relative passengers. There is no allegation that Allstate refused to provide coverage for an eligible pedestrian or non-resident passenger. That is what distinguishes this case from those in which the court has required reformation. As Allstate points out, Brennan and our Clark decisions[6] involved pedestrians who were expressly denied coverage by an insurance carrier. In such a case, reformation was required because it was absolutely clear that the injured

_____

[6]The Clark cases involved the situation where an automobile insured by State Farm struck Ricky Clark, a pedestrian. Clark filed a class-action suit against State Farm seeking to collect extended PIP benefits under CAARA. At that time, State Farm's policies contained an express Pedestrian Limitation provision excluding pedestrians from coverage under the extended PIP provisions. As the Colorado Court of Appeals made clear in Brennan, such a limitation violates CAARA. On appeal from the district court's dismissal of all claims, we held that Brennan required reformation of the policy to provide extended PIP benefits for Clark, an injured pedestrian. Clark v. State Farm Mut. Auto. Ins. Co., 319 F.3d 12134 (10th Cir. 2003) (Clark I). We remanded for a determination of an effective date for the reformation and the amount of extended PIP benefits to which Clark was entitled. The district court concluded that the proper reformation date was the date of its order and found that Clark was entitled to the statutory aggregate cap of $200,000. Clark v. State Farm Mut. Auto. Ins. Co., 292 F. Supp. 2d 1252, 1270 (D. Colo. 2003) (Clark II). Clark III was our decision affirming Clark II on appeal.

person, a pedestrian, had been denied coverage to which he was entitled and that such coverage had clearly not been offered to the insured. The Pauls *were* offered extended PIP benefits covering persons eligible to receive benefits under the No-Fault Act. They specifically chose to purchase only the basic PIP benefits. Reformation of the contract is not required where the claimed violation of the No-Fault Act was the failure to expressly enumerate all the parties eligible to receive PIP benefits, as opposed to the failure to offer those benefits and the subsequent failure to provide coverage.[7]

Alternatively, we hold that, given all the materials that were mailed and otherwise provided to the Pauls, they were adequately informed that pedestrians and passengers were eligible to receive PIP benefits.

---

[7]Several courts have noted that, under Colorado law, "[r]eformation of a written instrument is appropriate only when the instrument does not represent the true agreement of the parties. The purpose of reformation is to give effect to the parties' actual intentions." Carder, Inc. v. Cash, 97 P.3d 174, 180-81 (Colo. Ct. App. 2003). Where the insured has expressly declined the optional extended PIP benefits, these courts have held that reformation to provide those optional extended PIP benefits on the ground that there was an erroneous pedestrian exclusion "would not reflect the intent of the parties[] [as the insured's] expressed intention was to decline [the insurance carrier's] offer of additional PIP benefits." Morris v. Travelers Indemnity Co., 2006 WL 1889963, at *10 (D. Colo. July 10, 2006); Sigala v. Hartford Underwriters Ins. Co., 2005 WL 2098141, at *6 (D. Colo. Aug. 29, 2005) ("The fact that the policies issued to [the plaintiff] contained inaccurate descriptions of the [additional] PIP coverage that [plaintiff] had been offered, and which she declined, does not support her claim for reformation.")

## II. Sufficiency of offer

Hill argues the initial offer of insurance, particularly extended PIP benefits, was inadequate because Pitcher failed to explain it fully and the surrounding documentation contained misstatements and omissions of various items. He contends that the offers to renew the Paul insurance policy were similarly inadequate.

While § 710 states that an insurer "shall offer" enhanced PIP benefits to an insured, the statute does not define "offer." In Brennan, the Colorado Court of Appeals stated that "all that is required is that the insurer *offer* these extended benefits." Brennan, 961 P.2d at 554. In Fazio v. State Farm Mut. Auto. Ins. Co., 55 P.3d 229, 231 (Colo. Ct. App. 2002), the court stated that "[t]he plain meaning of this language is that a named insured who has minimum PIP coverage under § 10-4-706 must be offered an opportunity to purchase certain types of enhanced PIP coverage."

In an unpublished decision, our court, in determining whether the insurer had fulfilled its duty to offer optional extended PIP coverage under § 710, applied the test set out by the Colorado Supreme Court in Allstate Ins. Co. v. Parfrey, 830 P.2d 905, 913 (Colo. 1992). Johnson v. State Farm Mut. Auto. Ins. Co., 158 Fed. Appx. 119 (10th Cir. 2005) (unpublished). Parfrey involved the requirement imposed on insurance companies by Colo. Rev. Stat. § 10-4-609(b)(2) to offer

higher than the statutory minimum in uninsured or underinsured motorist coverage. We do not rely on unpublished decisions as authoritative precedent. However, we take this opportunity to adopt and publish the following language, as well as language quoted, *infra*, from an unpublished decision. In analyzing "the nature and scope of an insurer's duty" the Colorado Supreme Court "determined that the insurer must perform its duty of notification 'in a manner reasonably calculated to permit the [insured] to make an informed decision on whether to purchase . . . coverage higher than the minimum statutory liability limits.'" Johnson, 158 Fed. Appx. at 121 (quoting Parfrey, 830 P.2d at 913). Parfrey elaborated on the proper test for determining whether an insurer has performed its duty to notify:

> In determining whether an insurer has fulfilled its statutory duty, a court may appropriately consider such factors as the clarity with which the purpose of . . . coverage was explained to the insured, whether the explanation was made orally or in writing, the specificity of the options made known to the insured, the price at which the different levels of . . . coverage would be purchased, and any other circumstances bearing on the adequacy and clarity of the notification and offer.

Parfrey, 830 P.2d at 913. "In the final analysis," the sufficiency of the offer "must be resolved under the totality of the circumstances." Id. at 914. Both parties here advocate application of the Parfrey totality of the circumstances test.[8]

_____

[8]Not all courts agree that Parfrey should apply to the notice requirement of
(continued...)

-15-

Whether we apply the specific factors set out in <u>Parfrey</u> or simply look at the totality of the circumstances, we conclude that Allstate's offer of extended PIP benefits to Paul was adequate and enabled the Pauls to make an informed decision about whether to purchase extended coverage. Initially, Paul had a face-to-face meeting with Pitcher, in which she testified she explained the various coverages, showed Paul the options for extended PIP coverage on her computer screen and went over the PIP Disclosure Form. In <u>Johnson</u>, we held that a face-to-face meeting in which the agent explained the extended PIP coverages, coupled with a brochure which provided a short explanation of and chart describing PIP coverages, constituted a sufficient offer under the No-Fault Act. We noted that:

> the <u>Parfrey</u> analysis does not require an insurer to thoroughly address all of the conceivable situations in which enhanced PIP coverage might be desirable. Rather, the law merely required that the insured b[e] given enough information to advise the insured of the availability of coverage and permit a reasonably informed decision on whether to purchase it.

[8](...continued)
Colo. Rev. Stat. § 10-4-710. <u>See</u>, <u>e.g.</u>, <u>May v. Travelers Prop. Cas. Co.</u>, 2006 WL 2784864, at *3 (D. Colo. Sept. 26, 2006) (noting that it "question[s] whether the commercial reasonableness test set forth in <u>Parfrey</u> is the correct standard under which to evaluate the sufficiency of Travelers' offer to Mr. May [under § 710]" but further noting that "several cases from this District have utilized the <u>Parfrey</u> standard in similar cases"); <u>Lust v. State Farm Mut. Auto. Ins. Co.</u>, 412 F. Supp. 2d 1185, 1191-92 (D. Colo. 2006) (noting that plaintiff's reliance on the <u>Parfrey</u> test to show that notice under § 710 was not clear "is unavailing").

-16-

Johnson, 158 Fed. Appx. at 122. Here, Pitcher explained the PIP coverages and offered to quote Paul a price for extended PIP coverage. Paul declined the price quote. Pitcher also presented Paul with a written summary of the various PIP coverages in the Colorado PIP Disclosure Form.

Then, the policy which Allstate mailed to the Pauls contained an eight-page description of the extended PIP coverages available. Form X5188 accompanied the policy and it specifically stated that PIP coverage provided benefits for the named insureds, their passengers and pedestrians. This form was mailed to the Pauls on subsequent occasions as well. Additionally, Allstate mailed Form X67009 to the Pauls on several occasions, and it specifically stated that Allstate offered extended PIP benefits and provided an average price for such coverage. While Hill argues there were specific arguably ambiguous phrases and/or wordings in the various documents, it is impossible to conclude that, from all the above information, the Pauls were unable to make a reasonably informed decision not to purchase the extended PIP coverage.

### III.  Wage-loss benefits

Because Hill's claim for wage-loss benefits for Katelyn unlimited in time

depends upon the insurance policy being reformed to provide Katelyn with

extended PIP benefits, our conclusion that reformation is not necessary disposes of this issue.

## IV.  Applicability of aggregate limit of $200,000

Because the issue of whether an aggregate limit of $200,000 applies to Katelyn's claim also depends upon the insurance policy being reformed to provide Katelyn with extended PIP benefits, our conclusion that reformation is not necessary disposes of this issue as well.

## CONCLUSION

For the foregoing reasons, the orders of the district court are AFFIRMED.[9]

---

[9]We deny Allstate's motion to strike Hill's Rule 28(j) letter.