FILED
United States Court of Appeals
Tenth Circuit

February 29, 2008

Elisabeth A. Shumaker
Clerk of Court

**PUBLISH**

# UNITED STATES COURT OF APPEALS
# TENTH CIRCUIT

---

CEZER MORRIS, individually, and on
behalf of all others similarly situated,

      Plaintiff-Appellant,

v.

TRAVELERS INDEMNITY
COMPANY OF AMERICA, a
Connecticut corporation,

      Defendant-Appellee.

No. 06-1331

---

**Appeal from the United States District Court
for the District of Colorado
(D.C. No. 05-cv-00727-EWN-BNB)**

---

Robert B. Carey (Leif Garrison with him on the briefs) of The Carey Law Firm,
Colorado Springs, Colorado, for Plaintiff-Appellant.

Sonia S. Waisman of Morrison & Foerster LLP, Los Angeles, California (J. Eric
Elliff and Lila M. Bateman, of Morrison & Foerster LLP, Denver, Colorado, with
her on the briefs), for Defendant-Appellee.

---

Before **HARTZ**, **SEYMOUR**, and **McCONNELL**, Circuit Judges.

---

**SEYMOUR**, Circuit Judge.

Cezer Morris ("Mr. Morris") filed this action against Travelers Indemnity Company of America ("Travelers") for failure to pay insurance benefits he claims Travelers owed him for injuries arising out of an accident involving a car insured by Travelers. The district court granted summary judgment in favor of Travelers. Mr. Morris appeals, and we reverse.

# I

On January 23, 2002, Mr. Morris was involved in an automobile accident in Denver, Colorado. He was a passenger in a 1996 Toyota Avalon driven by Lee Grant Austin. Mr. Morris suffered severe injuries, incurred medical expenses, and lost wages. At the time of the accident, the Toyota was insured by Travelers under a policy issued to Dorothy Austin ("Ms. Austin"). Under Colorado law, as a passenger in the vehicle, Mr. Morris was covered by Ms. Austin's policy. COLO. REV. STAT. § 10-4-707. As such, Mr. Morris began receiving basic personal insurance protection ("PIP") benefits from Travelers under Ms. Austin's policy. Once these basic PIP benefits were exhausted, however, Travelers ceased paying benefits altogether. Mr. Morris now seeks enhanced PIP ("APIP") benefits.

Mr. Morris brought this action asserting that Travelers (1) breached the insurance contract between Travelers and Ms. Austin by failing to pay APIP

benefits,[1] and (2) violated Colorado law by failing to offer such benefits. *See* COLO. REV. STAT. § 10-4-706(4)(a); *Thompson v. Budget Rent-a-Car Sys., Inc.*, 940 P.2d 987, 990 (Colo. Ct. App. 1996) (concluding "[w]hen an insurer fails to offer the insured optional coverage that it is statutorily required to offer, additional coverage in conformity with the required offer is incorporated into the agreement by operation of law"). He sought reformation of the insurance contract and a declaration of rights under the proposed reformed contract. Travelers contended that Ms. Austin, the policyholder, was offered and declined APIP coverage. The district court granted summary judgment in favor of Travelers.

## II

In diversity cases, the laws of the forum state govern our analysis of the underlying claims, while federal law determines the propriety of the district court's summary judgment. *Hill v. Allstate Ins. Co.*, 479 F.3d 735, 739 (10th Cir. 2007). We review grants of summary judgment de novo, "applying the same standard as the district court pursuant to Rule 56(c) of the FEDERAL RULES OF CIVIL PROCEDURE." *Gwinn v. Awmiller*, 354 F.3d 1211, 1215 (10th Cir. 2004).

The Colorado Auto Accident Reparations Act, COLO. REV. STAT. § 10-4-

---

[1] If purchased, APIP coverage applies to non-family occupants of a vehicle, like Mr. Morris. *Brennan v. Farmers Alliance Mutual Ins. Co.*, 961 P.2d 550, 553 (Colo. Ct. App. 1998).

701 (repealed July 1, 2003) ("No-Fault Act" or "Act"), "was enacted in 1973 with the purpose of avoiding inadequate compensation to all victims of automobile accidents in the State of Colorado." *Reid v. Geico Gen. Ins. Co.*, 499 F.3d 1163, 1165 (10th Cir. 2007). The Act required automobile insurance policies "to include certain minimum or basic personal injury protection ("PIP") benefits to compensate injured persons for medical expenses and lost wages resulting from an automobile accident." *Id.* The Act also required insurers to offer the named insured optional APIP benefits, in exchange for higher premiums. COLO. REV. STAT. § 10-4-710(2)(a). Specifically, the Act stated:

> Every insurer shall offer the following enhanced benefits for inclusion in a complying policy, in addition to the basic coverages described in section 10-4-706, at the option of the named insured:
> (I) Compensation of all expenses of the type described in section 10-4-706(1)(b) [medical and non-medical expenses up to $50,000 per person per accident] without dollar or time limitation; or
> (II) Compensation of all expenses of the type described in section 10-4-706(1)(b) without dollar or time limitations and payment of benefits equivalent to eighty-five percent of loss of gross income per week from work the injured person would have performed had such injured person not been injured during the period commencing on the day after the date of accident without dollar or time limitations.

COLO. REV. STAT. § 10-4-710(2)(a).

Subsequent to the district court's decision and contrary to its conclusion, the Colorado Court of Appeals held that insurers must offer *both* kinds of enhanced coverage to comply with the statute, rather than either/or at the option of the insurer. *Soto v. Progressive Mountain Ins. Co.*, (No. 05CA1032) 2007 WL

-4-

2128189, at *5 (Colo. Ct. App. July 26, 2007) (unpublished) (cert. pending); *see also Reid*, 499 F.3d at 1168 (applying *Soto*). Failure to make a compliant offer of APIP benefits violates the statute and results in automatic reformation of the contract to include such additional coverage. *Thompson*, 940 P.2d at 990. The No-Fault Act does, however, allow insurers to cap APIP benefits at $200,000 per person. COLO. REV. STAT. § 10-4-710(2)(a).

Ms. Austin's Travelers policy included basic PIP coverage, but not APIP coverage. As part of the application process for this policy, Ms. Austin signed a "Supplementary Personal Injury Application – Colorado" form ("PIP Form"), and an "ACORD" application form. The PIP Form explained that Travelers offered "benefits for medical expenses, rehabilitation expenses, work loss, essential services expenses and death compensation resulting from an eligible person's injuries caused by an auto accident." Supp. App. at 2379. The PIP Form also offered two forms of "additional personal injury protection": Option RA and Option RARB. Option RA offered, *inter alia*, a maximum of $200,000 in medical expenses, a maximum of $50,000 in rehabilitation expenses, and a maximum of $400 per week in wage loss expenses for up to 52 weeks. All benefits under Option RA were subject to a $200,000 maximum aggregate. Option RARB offered, *inter alia*, up to a $200,000 maximum aggregate for medical and rehabilitation expenses, and up to $400 per week in wage loss expenses (with no

time limit) subject to the same $200,000 maximum aggregate. Ms. Austin declined both forms of enhanced coverage.

In *Allstate Ins. Co. v. Parfrey*, 830 P.2d 905 (Colo. 1992), the Colorado Supreme Court held that an insurer must offer insurance coverage "in a manner reasonably calculated to permit the potential purchaser to make an informed decision." 830 P.2d at 913. In determining whether an insurer complied with this standard, courts must look to the totality of circumstances. *Id.* at 914. In doing so, courts may appropriately consider:

> . . . the clarity with which the purpose of . . . coverage was explained to the insured, whether the explanation was made orally or in writing, the specificity of the options made known to the insured, the price at which the different levels of . . . coverage would be purchased, and any other circumstances bearing on the adequacy and clarity of the notification and offer."

*Id.* at 913.

Under the summary judgement standard, therefore, Travelers was required to support its motion with evidence that it had made a statutorily compliant offer of APIP coverage to the insured in this case. After reviewing the record, we conclude that Travelers did not establish it made an offer of APIP coverage in compliance with COLO. REV. STAT. § 10-4-710(2)(a)(II). That portion of the statute requires insurers to offer an APIP coverage option that includes, among other things, "payment of benefits equivalent to *eighty-five percent of loss of gross income* per week from work the injured person would have performed had

-6-

such injured person not been injured . . ."  COLO. REV. STAT. § 10-4-710(2)(a)(II) (emphasis added).  The closest option Travelers offered on the PIP Form was Option RARB, which only provided for $400 per week in work loss payments.[2] Supp. App. at 2379.  This amount could be insufficient to compensate for an eighty-five percent loss of gross income in many cases.  Additionally, the PIP Form on which the APIP coverage options appear do not list their prices.  *Id.* Consequently, Travelers' APIP coverage options on the PIP Form did not comply with the statute and were not offered "in a manner reasonably calculated to permit the potential purchaser to make an informed decision."  *Parfrey*, 830 P.2d at 913.[3]

Travelers contends that even if the APIP coverage options described on the PIP Form were statutorily deficient, the APIP coverage options on the ACORD form were compliant.  Travelers points to the fact that "this form explicitly lists APIP coverage options, including an option for wage loss benefits unlimited in time and/or *unlimited in weekly amount*."  Aple. Br. at 26 (emphasis in original);

---

[2]Option RA also provided for $400 per week in work loss payments, but only for up to 52 weeks.

[3] The fact that Ms. Austin declined these non-compliant offers does not mean that she would have rejected compliant ones or that Travelers' noncompliance should be excused.  *Thompson*, 940 P.2d at 990 ("Here, because Budget did not offer supplemental no-fault coverage . . . we conclude that such coverage, was automatically incorporated into the agreement. We further conclude that the driver's after-the-fact statement that he would have refused the additional coverage if it had been offered does not require a different result.").

*see also* Supp. App. at 2381. Thus, Travelers argues, "the ACORD Form offers an option for APIP coverage even greater than set forth under Section 10-4-710(2)(a)(II)." Aple. Br. at 26. We are not persuaded this was a compliant offer.

The section of the ACORD form that Travelers refers to is merely a series of tiny boxes in the middle of an extensive application form. *See* Supp. App. at 2381. If not explained by an agent, these boxes could be confusing. *Id.* There is a "Weekly Work Loss Benefit" box, for instance, located next to an empty box which, in turn, is located next to a box containing a dollar sign, a space (presumably where the applicant can fill in a dollar amount) and the words "per week." There is also a box called "No Weekly Limit." These boxes contain no explanations about what a "weekly work loss benefit" might entail, no instructions as to how the boxes needed to be filled in to purchase such benefits, no price information, and no discussion of how the boxes related (if at all) to the APIP options listed on the PIP Form.[4] Applicants reading these forms together might reasonably believe that they are limited to the APIP options described on the PIP Form. The boxes on the ACORD form do not, therefore, offer APIP coverage "in a manner reasonably calculated to permit the potential purchaser to

---

[4]Compare with *Reid*, 499 F.3d at 1166, 1169 (finding a compliant offer of APIP coverage where each option was numbered and "followed by three more columns setting forth for each option (a) the 'Total Aggregate Limit of Applicable PIP Benefits;' (b) the applicable 'Work Loss Limitations;' and (c) a percentage reflecting the 'Approximate Additional Premium Per Vehicle.'"

make an informed decision." *Parfrey*, 830 P.2d at 913.

Travelers also contends that Ms. Austin received a verbal explanation of Travelers' APIP benefits from Roger Suggs ("Mr. Suggs"), a Travelers insurance agent, and that these explanations "constitute[d] part of the offer." Aple. Br. at 27. While it is indeed true that insurers need not provide *written* explanations of their APIP coverage options, *see Stickley v. State Farm Mut. Auto. Ins. Co.*, 505 F.3d 1070, 1077 (10th Cir. 2007), the evidence in the record does not unambiguously establish that Mr. Suggs provided a *sufficient* explanation of Travelers' APIP benefits to Ms. Austin.

The only evidence presented to the district court on this matter was an affidavit by Mr. Suggs. Aplt. App. at 1357-59. This affidavit asserts Mr. Suggs had "a routine practice that [he] established in order to assure that each insurance applicant [was] fully informed about the insurance they [were] buying," *id.* at 1357, and that it was his practice to review the PIP Form with each applicant "and discuss the various PIP and APIP options that were available." *Id.* at 1358. Mr. Suggs admits in the affidavit that he does not have a "specific recollection of Ms. Austin" or of his conversation with her. *Id.* He avers, however, that "[a]t that time, following my usual routine, I would have explained the various coverage options to her, including the availability of APIP coverage. I have no reason to believe that I did not follow this procedure with Ms. Austin." *Id.*

An affidavit from an agent that it was his usual practice to explain the various APIP coverage options constitutes relevant evidence that his conduct on the occasion he met with the insured was in conformity with that routine practice. FED. R. EVID. 406. The question remains, however, whether what we know about Mr. Suggs' routine, coupled with other evidence offered by Travelers, was sufficient to meet Travelers' burden to show it made a compliant offer of coverage. *See Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970) ("As the moving party, respondent had the burden of showing the absence of a genuine issue as to any material fact, and for those purposes the material it lodged must be viewed in the light most favorable to the opposing party.").

Traveler's relies on *Johnson v. State Farm Mut. Automobile Ins. Co.,* 158 F. Appx. 119 (10th Cir. 2005), to support its argument that it was entitled to summary judgment here. While unpublished cases are not precedential in this circuit, we nevertheless find *Johnson* instructive. There, the affidavit from the insurance agent established she had met with the insured and that it was her routine practice to make "policyholders aware of higher PIP limits, using a brochure she attached to her affidavit. The brochure provided a short explanation of PIP benefits, along with a chart showing the varying levels of available PIP coverage." *Id.* at 122. Thus, it was "[t]he evidence of a face-to-face meeting where [the insured] received a pamphlet explaining the different levels" of

coverage," *id.*, that this court held was sufficient to meet the insurance company's burden to establish it had made a compliant offer. Notably, the district court in *Johnson*, and presumably the record on appeal, made clear that "[t]he "Coverages" chart used by [the agent] describes the details of each coverage, including enhanced coverage as required by C.R.S. § 10-4-710, *in detail.*" *Johnson v. State Farm Mut. Automobile Ins. Co.*, No. 02-MK-2252 (D. Colo. Jun. 30, 2004), Aplt. App., vol. IV at 1318-34 (emphasis added).

In *Hill v. Allstate Ins. Co.,* 479 F. 3d at 742, we cited *Johnson* favorably in concluding that Allstate had met its burden to show it made a compliant offer. We noted that "[i]n *Johnson*, we held that a face-to-face meeting in which the agent explained the various coverage options, *coupled with a brochure which provided a short explanation of and chart describing PIP coverages,* constituted a sufficient offer under the No-Fault Act." *Id.* at 742 (emphasis added). As in *Johnson*, the facts in *Hill* do not support the conclusion that a bare description in non-specific terms of an agent's routine practice describing extended APIP coverage is sufficient, by itself, to meet the insurance company's burden to establish a statutorily compliant offer. Hill involved an insurance agent's deposition testimony describing the specific discussion she recalled having with the insured. She testified that she showed him the available APIP coverages both on her computer and on a Disclosure Form. The district court's opinion in *Hill*

-11-

makes particularly clear, Allstate's Disclosure Form described two options that were compliant with the requirements of both of the sections of Colo. Rev. State. § 10-4-710 (2)(a) that are at issue in this case. The district court there said,

> Option VB02 provides coverage of medical expenses without any time limitation, with a 200,000 thousand dollar 'aggregate limit for PIP and Additional PIP' this APIP coverage offer satisfies the requirements of § 10-4-710(2)(a)(I), C.R.S. Option VB01 provides the same coverage for medical expenses, plus work loss coverage of '100 % of the first $125/week loss in gross income, 85% of remaining loss in gross income' without any time limitation. This APIP coverage offer satisfied the requirements of § 10-4-710(2)(a)(II), C.R.S.

*Hill v. Allstate Ins. Co*, 2006 WL 229202 at * 3 (D. Colo. 2006). Consequently, this court reasonably concluded on appeal in *Hill*:

> Allstate's offer of extended PIP benefits to [the insured] was adequate and enabled [the insured] to make an informed decision about whether to purchase extended coverage. [The insured] had a face-to-face meeting with [the agent], in which [the agent] testified she explained the various coverages, showed [the insured] the options for extended PIP coverage on her computer screen *and went over the PIP Disclosure Form*.

479 F.3d at 742 (emphasis added)

As is apparent, our determinations in both *Johnson* and *Hill* that the insurance companies made compliant offers were based on significantly more evidence than the bare statement of an insurance agent that he had a routine practice of explaining extended APIP coverage. Instead, the evidence provided by the insurance companies in those cases were a combination of detailed written

-12-

material provided or explained to the insureds and the agent's testimony about his or her routine practices. Here, to the contrary, we have held that the written materials provided to Ms. Austin, the policyholder, were insufficient to establish that Travelers made an offer compliant with § 10-4-710(a)(2)(II) of the Colorado statute. Significantly, for our purposes, Mr. Suggs' affidavit does not fill in the gaps. It provides no specific details about Mr. Suggs' "usual routine." Given Traveler's position prior to *Soto* that it was only required to offer one of the two options set forth in Colo. Rev. Stat. § 10-4-701(2)(a), not both, coupled with its confusing forms, we cannot assume that Mr. Suggs would have correctly explained to Mr. Austin the second APIP option required by § 10-4-710(a)(2)(II). Having no way of assessing the adequacy of Mr. Suggs' routine explanation, we cannot conclude as a matter of law that it was sufficient. Accordingly, a genuine issue of material fact remains as to whether the information provided by Mr. Suggs permitted Ms. Austin to make a reasonably informed purchase decision. *See Parfrey*, 830 F.2d at 915 (reversing summary judgment because genuine issues of fact existed concerning, among other things, what an Allstate agent's usual practice actually entailed).

**III**

In sum, we conclude that the district court should not have granted

summary judgment in favor of Travelers.  Travelers' written APIP coverage options were not statutorily compliant, and there is a genuine issue of material fact as to whether the verbal information provided by Travelers allowed Ms. Austin to make a reasonably informed purchase decision.

Accordingly, we **REVERSE** the judgment of the district court and remand for further proceedings.