FILED
United States Court of Appeals
Tenth Circuit

February 11, 2009

Elisabeth A. Shumaker
Clerk of Court

**PUBLISH**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

KIRK WARREN and KURT
WARREN,

      Plaintiffs - Appellants,

v.

LIBERTY MUTUAL FIRE
INSURANCE COMPANY, a
Massachusetts insurance company,

      Defendant - Appellee.

No. 07-1482

**Appeal from the United States District Court
for the District of Colorado
(D.C. No. 05-cv-01891-EWN-MEH)**

Robert B. Carey (Julie B. Cliff with him on the briefs) The Carey Law Firm,
Colorado Springs, Colorado, for Plaintiffs-Appellants.

Stephen E. Csajaghy (Brian J. Spano with him on the briefs) Rothgerber Johnson
& Lyons LLP, Denver, Colorado, for Defendant-Appellee.

Before **KELLY, BALDOCK** and **O'BRIEN**, Circuit Judges.

**O'BRIEN**, Circuit Judge.

Kirk and Kurt Warren (collectively "Appellants"), twin brothers injured in an automobile accident, appeal from the district court's entry of summary judgment in favor of Liberty Mutual Fire Insurance Company ("Liberty Mutual"). They allege they are entitled to reformation of the insurance policy purchased by Kurt Warren and his purported wife, Deborah Bannister (n/k/a Deborah Warren), because Liberty Mutual's offer of extended or additional personal injury protection ("extended PIP" or "APIP") benefits violated the Colorado Auto Accident Reparations Act ("CAARA"), Colo. Rev. Stat. §§ 10-4-701 to -726 (2002).[1] The district court held Liberty Mutual's offer of APIP benefits violated CAARA but reformation was not warranted. We affirm in part and reverse in part.

## I. BACKGROUND

On September 29, 2002, Kurt was driving a 1983 Chevrolet Suburban in which Kirk was a passenger.[2] Kurt lost control of the vehicle, causing it to roll over. Kirk suffered a broken neck in the accident and was rendered a

---

[1] Prior to its repeal in 2003, CAARA was Colorado's no-fault insurance act, requiring motor vehicle owners to maintain minimum insurance coverage on their vehicles, including no-fault personal injury protection ("PIP") coverage. Colo. Rev. Stat. § 10-4-706(1). The mandatory minimum PIP coverage provided for reasonable and necessary medical care, rehabilitative care, lost wages and death benefits in the event of an accident without regard to fault. *See id.* CAARA also required insurers to provide and offer APIP coverage in exchange for higher premiums. Colo. Rev. Stat. § 10-4-710(2)(a). Except where otherwise indicated, all references to the Colorado Revised Statutes are to the version in effect in 2002.

[2] Kurt and Kirk are adult brothers who do not reside in the same household.

quadriplegic. Kurt sustained a broken wrist.

At the time of the accident, Kurt and the Suburban were insured under an automobile liability insurance policy issued by Liberty Mutual, Policy No. A02-291-804115 ("the Policy"). The Policy provided state minimum liability limits and basic PIP coverage. Bannister purchased the Policy after meeting with Doug Maxey, a Liberty Mutual Sales Representative, on March 5, 1996. Bannister and Maxey met for approximately thirty minutes at Bannister's workplace. During the course of the meeting, Bannister completed an automobile policy application and the fourth page of a Colorado PIP Coverage Options Disclosure Form 146 R3 ("1996 PIP Disclosure Form"). The latter form states in pertinent part:

> You may elect to purchase an Added PIP Medical Expenses option, and [sic] Added PIP Work Loss Option, or a combination of these two options applying to you and any family member for a reasonable increase in premium. If you elect either of the following, the $50,000 per person limit of benefits is increased to $200,000 per person for any one accident.

(Appellants' App. at 153.) Bannister declined each of the APIP options and signed at the bottom of the page.

At the end of the meeting, Maxey gave Bannister a thick folder of documents for her review. At her deposition, Bannister testified she could not recall what specific documents were contained in the folder. At his deposition, Maxey testified he could not recall Bannister's folder specifically but always provided applicants with the four-page 1996 PIP Disclosure Form, not just the

signature page, and the Colorado Automobile Insurance Summary Disclosure Form ("Summary Disclosure Form").

Following *Brennan v. Farmers Alliance Mutual Insurance Company*, 961 P.2d 550 (Colo. App. 1998),[3] Liberty Mutual issued its 2001 PIP Endorsement, which specified the APIP benefits available for purchase extended to pedestrians and guest occupants. Liberty Mutual claims it sent the 2001 PIP Endorsement to Kurt and Bannister in February or March 2002 along with the renewal documents for the Policy, but did not submit evidence to the district court to establish the fact of mailing.[4]

On September 29, 2005, Appellants filed a complaint against Liberty Mutual seeking declaratory relief and reformation on the ground its offer of APIP benefits violated CAARA. They also alleged breach of contract, statutory and common law bad faith breach of contract and breach of the implied covenant of good faith and fair dealing.

Liberty Mutual filed a motion for summary judgment arguing Appellants were not entitled to reformation because it made a statutorily compliant offer of

---

[3] In *Brennan*, the Colorado Court of Appeals held the offer of enhanced PIP benefits was required to extend to "1) the named insured, 2) resident relatives of the named insured, 3) passengers occupying the insured's vehicle with the consent of the insured, and 4) pedestrians who are injured by the covered vehicle." 961 P.2d at 553.

[4] The court explained: "While the law presumes receipt of a properly addressed piece of mail there is no evidence on record permitting any inference that the 2001 PIP Endorsement was actually mailed to the Insureds." *Warren v. Liberty Mut. Fire Ins. Co.*, 505 F. Supp. 2d 770, 779 (D. Colo. 2007) (citation and alterations omitted).

APIP benefits.  It argued if Appellants were entitled to reformation, the APIP benefits should be subject to a $200,000 aggregate cap.

Appellants filed a motion for partial summary judgment arguing they were entitled to reformation because Liberty Mutual's offer of APIP benefits violated three provisions of CAARA: (1) Colo. Rev. Stat. § 10-4-706(4)(a) (2001) (repealed effective July 1, 2002), which states the insurer must provide a written explanation of all available PIP coverage prior to issuing a policy; (2) Colo. Rev. Stat. § 10-4-111(3), which states the insurer must provide a summary disclosure form to the insured at the point of sale; and (3) Colo. Rev. Stat. § 10-4-710(2)(a), which requires every insurer to offer "enhanced benefits for inclusion in a complying policy, in addition to the basic coverages . . . at the option of the named insured."  They also claimed the offer was insufficient under *Allstate Insurance Company v. Parfrey*, 830 P.2d 905 (Colo. 1992).[5]

The district court granted Liberty Mutual's motion for summary judgment and denied Appellants' motion for partial summary judgment.  *Warren v. Liberty Mut. Fire Ins. Co.*, 505 F. Supp. 2d 770 (D. Colo. 2007).  The court held Liberty Mutual's offer of APIP benefits did not violate § 10-4-706(4)(a) or § 10-4-111

---

[5] In *Parfrey*, the Colorado Supreme Court held "an insurer's duty of notification and offer must be performed in a manner reasonably calculated to permit the potential purchaser to make an informed decision on whether to purchase . . . coverage higher than the minimum statutory liability limits . . . ."  830 P.2d at 913.  *Parfrey* involved an offer of UM/UIM coverage.  Because no statutory guidance exists, this Court has used the *Parfrey* analysis to determine what constitutes a sufficient offer of APIP coverage.  *See Padhiar v. State Farm Mut. Auto. Ins. Co.*, 479 F.3d 727, 733 (10th Cir. 2007).

because Bannister received the 1996 PIP Disclosure Form and the Summary Disclosure Form at the point of sale. It also determined the offer did not violate *Parfrey* because "under the totality of the circumstances, Defendant's offer was reasonably calculated to permit [Bannister] to make an informed decision." *Id.* at 782 (quotations omitted).

The court did, however, hold Liberty Mutual's offer violated § 10-4-710(2)(a) because the 1996 PIP Disclosure Form did not offer APIP benefits to guest occupants and pedestrians and there was insufficient evidence to establish Kurt and Bannister received the CAARA-compliant 2001 PIP Endorsement prior to the accident. Nevertheless, it concluded Appellants were not entitled to reformation because Bannister was offered (and declined) APIP benefits that would have covered both Kirk and Kurt. Because Appellants were not entitled to reformation, the court granted summary judgment in favor of Liberty Mutual on Appellants' remaining claims. The court explained: "In the absence of a viable ground for reformation of the Policy to incorporate a higher level of benefits, [Appellants] have no valid basis for [their remaining] claims." *Id.* at 783.

## II. DISCUSSION

Appellants contend the court erred in granting summary judgment in favor of Liberty Mutual on their § 10-4-706(4)(a), § 10-4-111 and *Parfrey* claims, and denying reformation. Liberty Mutual contends we should affirm the district court's denial of reformation because Bannister was offered APIP benefits that

would have covered both Kirk and Kurt.  In the alternative, Liberty Mutual argues

we should affirm because it did not violate § 10-4-710(2)(a).  It claims it was not

required to identify the specific categories of persons eligible for APIP benefits

under *Hill v. Allstate Ins. Co.*, 479 F.3d 735 (10th Cir. 2007).  It also argues it did

not violate § 10-4-710(2)(a) because any defect in the 1996 PIP Disclosure Form

was remedied by the 2001 PIP Endorsement.  Appellants argue if the Policy is

reformed, the reformed policy should not be subject to a $200,000 aggregate cap

and their claims for breach of contract, willful and wanton statutory bad faith,

breach of the implied covenant of good faith and fair dealing, and common law

bad faith should be reinstated.

We review an award of summary judgment *de novo*, viewing the record "in

the light most favorable to . . . the non-moving party."  *Reid v. Geico Gen. Ins.

Co.*, 499 F.3d 1163, 1167 (10th Cir. 2007).  Summary judgment is appropriate

only "if the pleadings, the discovery and disclosure materials on file, and any

affidavits show that there is no genuine issue as to any material fact and that the

movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(c).  If there

is no genuine issue of material fact in dispute, we then determine if the

substantive law was correctly applied by the district court.  *Osgood v. State Farm

Mut. Auto. Ins. Co.*, 484 F.2d 141, 143 (10th Cir. 1988).  Since this case is

grounded on diversity jurisdiction, the substantive law of Colorado governs.

*Blanke v. Alexander*, 152 F.3d 1224, 1228 (10th Cir. 1998).

A. § 10-4-706(4)(a), § 10-4-111 and *Parfrey*

Appellants contend there was a material issue of fact regarding whether Bannister received the 1996 PIP Disclosure Form and the Summary Disclosure Form at the point of sale, precluding summary judgment on their § 10-4-706(4)(a), § 10-4-111 and *Parfrey* claims. We disagree. Maxey testified he routinely provided insurance applicants with the four-page 1996 PIP Disclosure Form and the Summary Disclosure Form. Testimony from an insurance agent that it was his usual practice to provide certain documents to insurance applicants "constitutes relevant evidence that his conduct on the occasion he met with the insured was in conformity with that routine practice." *Morris v. Travelers Indem. Co. of Am.*, 518 F.3d 755, 761 (10th Cir. 2008). Maxey's testimony was uncontroverted by Bannister's testimony that she could not recall what documents she received.

Even if the court had found an issue of fact regarding Bannister's receipt of the 1996 PIP Disclosure Form and the Summary Disclosure Form, Liberty Mutual would still have been entitled to summary judgment on Appellants' claim the offer of APIP benefits violated § 10-4-706(4)(a) because "the § 10-4-706(4)(a) requirement is inapplicable to an offer of enhanced PIP benefits under § 10-4-710(2)(a)." *Munger v. Farmers Ins. Exch.*, 174 P.3d 832, 836 (Colo. App. 2007), *cert. denied*, 2008 WL 17160 (2008); *see also Stickley v. State Farm Mut. Auto. Ins. Co.*, 505 F.3d 1070, 1077 (10th Cir. 2007).

-8-

B. § 10-4-710(2)(a)

Liberty Mutual contends the district court erred in holding it violated § 10-4-710(2)(a) because the 1996 PIP Disclosure Form did not offer APIP benefits to guest occupants and pedestrians and there was insufficient evidence to establish Kurt and Bannister received the CAARA-compliant 2001 PIP Endorsement prior to the accident.

Liberty Mutual cites *Hill* in support of its argument that it was not required to identify the specific categories of persons eligible for APIP benefits. We disagree with Liberty Mutual's reading of *Hill*. In *Hill*, we held the insurer's offer of APIP benefits did not violate CAARA where it covered all persons eligible to receive benefits under the Act. 479 F.3d at 741. Here, Liberty Mutual did not define its offer in terms of CAARA, instead offering APIP benefits to "you and any family member." (Appellants' App. at 153.) We agree with the district court that "although it may be true that an insurer's silence in referencing the persons covered by APIP does not permit an inference of exclusion, it is certainly true that when an insurer lists some persons covered by APIP coverage, those not included on the list are considered excluded." *Warren*, 505 F. Supp. 2d at 779.

Liberty Mutual also argues it did not violate § 10-4-710(2)(a) because any defect in the 1996 PIP Disclosure Form was remedied by the 2001 PIP Endorsement. The district court found Liberty Mutual did not present any

evidence it mailed the 2001 PIP Endorsement to the insureds prior to the accident. The court explained: "While the law presumes receipt of a properly addressed piece of mail there is no evidence on record permitting any inference that the 2001 PIP Endorsement was actually mailed to the Insureds." *Id.* (quotations and alterations omitted). On a motion for summary judgment, the court must view the facts in the light most favorable to the non-moving party. *Reid*, 499 F.3d at 1167. Viewing the facts in the light most favorable to Appellants, the district court correctly concluded Liberty Mutual violated § 10-4-710(2)(a) and the evidence was insufficient evidence to establish Appellants received the 2001 PIP Endorsement.

C. Reformation as to Kirk Warren

Though it concluded Liberty Mutual violated § 10-4-710(2)(a) , the district court held Appellants were not entitled to reformation because Liberty Mutual's offer of APIP benefits covered both Kirk and Kurt. In arriving at this result, the court interpreted the offer of APIP coverage contained in the 1996 PIP Disclosure Form to "you and any family member" to include Kirk, an adult family member not residing in the same household as the named insureds. (Appellants' App. at 153.) The term "family member" is not defined in the Policy and is not used in CAARA. Appellants argue the term is synonymous with "resident relative" which is defined in CAARA as a relative of the named insured, if the relative is a resident in the household of the named insured at the time of the accident. *See*

Colo. Rev. Stat. § 10-4-707(1)(b); § 10-4-703(12).  They argue Kirk was not a resident relative but a guest occupant, defined in CAARA as "any other person . . . occupying the described motor vehicle with the consent of the insured."  Colo. Rev. Stat. § 10-4-707(1)(c).  The district court concluded the term "family member" was not limited to resident relatives.  In denying Appellants' motion for reconsideration the court explained:

> I see no reason to graft CAARA's statutory "resident relative" definition onto Defendant's offer of APIP benefits to cover "any family member."  Indeed, it strains credulity to believe . . . that Defendants simultaneously ignored the strictures of CAARA regarding required coverage while at [t]he same time implicitly adopting its definitional language.

*Warren v. Liberty Mut. Fire Ins. Co.,* No. 05-cv-01891, 2007 WL 3342687, at *3 (D. Colo., Nov. 8, 2007).[6]

At oral argument before this Court, counsel for Liberty Mutual conceded Kirk was not a family member within the meaning of the Policy.  Thus, he was not within the scope of the offer of APIP benefits and is entitled to reformation.  *See Brennan*, 961 P.2d at 554 ("[W]hen . . . an insurer fails to offer the insured optional coverage that satisfies the No-Fault Act, additional coverage in

---

[6] The district court stated: "In a recent case with analogous facts and the same Defendant, Judge Lewis T. Babcock expressly adopted my reasoning here."  *Warren*, 2007 WL 3342687, at *3 n.2.  In *Weber v. Liberty Mutual Fire Insurance Company*, Judge Babcock denied reformation to a plaintiff who was the named insured because she had been offered APIP benefits covering "you and any family member."  No. 06-00104, 2007 WL 1106106, at *5 (D. Colo., Apr. 12, 2007).  Judge Babcock did not consider whether an adult relative not residing with the named insured was a "family member" within the meaning of the 1996 PIP Disclosure Form.

-11-

conformity with the offer mandated by statute will be incorporated into the policy."); *see also Thompson v. Budget Rent-A-Car Sys., Inc.*, 940 P.2d 987, 990 (Colo. App. 1996) ("[W]hen a policy is violative of a statute, reformation is . . . required to assure that coverage will meet the statutory minimums."). The subjective intent of the insureds is not relevant to the analysis; that is, we need not consider whether Bannister would have purchased APIP coverage covering Kirk if it had been offered. *See Thompson*, 940 P.2d at 990.

D.  Reformation as to Kurt Warren

Appellants concede Kurt was within the scope of Liberty Mutual's offer of APIP benefits but argue the Policy should be reformed to provide the full extent of APIP benefits, including APIP benefits to the named insured. This position is flatly contradicted by our precedent.

In *Stickley v. State Farm Mutual Automobile Insurance Company*, we held "when an insurance policy is found to violate CAARA, only the defective portion of the policy is reformed to comply with CAARA. It does not wipe the slate clean and give the insured the fullest amount of benefits available for every category possible." 505 F.3d at 1080. Thus, we denied reformation to Stickley based on State Farm's failure to offer enhanced PIP benefits to pedestrians because Stickley "was not a pedestrian and therefore would not receive additional benefits as a result of reformation based on that pedestrian limitation." *Id. See also Wilson v. Titan Indem. Co.*, 508 F.3d 971, 974 (10th Cir. 2007) ("Based on

*Stickley*, we conclude that reformation of Plaintiff's policy would not entitle him to enhanced PIP benefits for his own injuries as the named insured because the alleged defect in Defendant's offer of coverage concerned only passengers and pedestrians."). *Stickley* and *Wilson* make clear Liberty Mutual's failure to offer APIP benefits for guest occupants and pedestrians does not warrant reformation in favor of the named insured.[7]

E. Aggregate Cap

Liberty Mutual argues if this Court determines Kirk and/or Kurt are entitled to reformation, the reformed policy should be subject to an aggregate cap of $200,000. Appellants argue the reformed policy should not be capped. CAARA authorizes an aggregate gap of $200,000 per person, per accident. Colo. Rev. Stat. § 10-4-710(2)(b). Where an insurance policy is reformed by the court, the reformed policy will be subject to an aggregate cap if the original policy included an aggregate cap. *See Brennan*, 961 P.2d at 555. If the original policy did not include an aggregate cap, the reformed policy will likewise not be capped. *See Thompson*, 940 P.2d at 991 ("Budget could have included in its rental agreement a provision for a $ 200,000 cap for all benefits. It did not do so, however, and therefore, plaintiffs' benefits are not subject to such a limitation.").[8]

---

[7] Because we conclude Kurt is not entitled to reformation, we need not consider Liberty Mutual's argument that Kurt is not entitled to reformation on account of his bankruptcy filing.

[8] A reformed policy will also be subject to an aggregate cap if the original coverage could never have reached $200,000 given its payment limits. *See Clark v. State*

Appellants argue the reformed policy should not be capped because the Policy did not include a $200,000 cap. Liberty Mutual claims the Policy would have included a cap of $200,000 on the declarations page if the insureds had purchased APIP coverage.[9] The district court did not reach the issue because it concluded reformation was not warranted. We leave it to the district court to determine in the first instance whether the reformed policy should be capped. *See Habecker v. Town of Estes Park*, 518 F.3d 1217, 1227 (10th Cir. 2008) ("We do not typically decide issues not passed upon below.") (quotations omitted).

F.  Remaining Claims

Appellants contend if we determine reformation is warranted, we should reinstate their claims for breach of contract, willful and wanton statutory bad faith, breach of the implied covenant of good faith and fair dealing and common law bad faith. Because Kurt is not entitled to reformation, summary judgment was properly entered in favor of Liberty Mutual on all of his claims. Whether Kirk can pursue his secondary claims depends on the effective date of reformation. *See Clark v. State Farm Mut. Auto. Ins. Co.*, 319 F.3d 1234, 1243-44 (10th Cir. 2003) ("*Clark I*"). As we explained in *Clark I*:

These contract, tort, and statutory claims . . . will remain viable only

---

*Farm Mut. Auto. Ins. Co.*, 433 F.3d 703, 711 (10th Cir. 2005) ("*Clark II*") ("State Farm need not specifically include a $ 200,000 aggregate limit under the P1 coverage symbol when such basic coverage cannot possibly provide PIP benefits exceeding that amount.").

[9] Liberty Mutual also points out it never sold uncapped APIP coverage in Colorado.

if the district court in the exercise of its equitable power determines that reformation should occur as of a date preceding its order of reformation. Only under those circumstances would there be an extant contract, tort, or statutory duty to be breached. Conversely, if reformation is ordered to correspond to the date of entry of the order of reformation, there would be no pre-existing duty to pay extended PIP benefits.

*Id.* at 1244.

"[T]he effective date of reformation is an equitable decision to be determined by the trial court based on the particular circumstances of each case." *Id.* at 1243. Thus, on remand, the district court must first decide the effective date of reformation. Possible dates include: (1) the date the Policy was issued; (2) the date the trial court in *Brennan* reformed the policy; (3) the date of the *Brennan* decision; and (4) the date the district court on remand reforms the Policy in favor of Kirk. *See id.*

In exercising its equitable power, the district court should consider all appropriate factors, including the following: (1) the degree to which reformation from a particular effective date would upset past practices on which the parties may have relied and whether [Liberty Mutual] anticipated the rule in *Brennan*; (2) how reformation from a particular effective date would further or retard the purpose of the rule in *Brennan*; and (3) the degree of injustice or hardship reformation from a particular effective date would cause the parties. These factors do not necessarily have equal weight but are to be evaluated on the basis of the strength of the equitable and policy considerations underlying each.

*Id.* at 1243-44 (quotations and citations omitted). Upon deciding the effective date of reformation, the district court can determine in the exercise of its discretion whether Kirk's secondary claims should be reinstated.

We **AFFIRM** the grant of summary judgment in favor of Liberty Mutual on all of Kurt Warren's claims but **REVERSE** the grant of summary judgment in favor of Liberty Mutual on Kirk Warren's reformation claim. We **REMAND** to the district court for further proceedings consistent with this opinion. We leave it to the district court to determine whether the reformed policy should be subject to an aggregate cap, the date of reformation, and the viability of Kirk Warren's claims for breach of contract, willful and wanton statutory bad faith, breach of the implied covenant of good faith and fair dealing, and common law bad faith. We **DENY** Kirk and Kurt Warren's motion for an order certifying a question of state law to the Colorado Supreme Court.