FILED
United States Court of Appeals
Tenth Circuit

May 10, 2010

Elisabeth A. Shumaker
Clerk of Court

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**

---

SHAHAB SHABESTARI,

      Plaintiff-Appellant,

v.

UTAH NON-PROFIT HOUSING,

      Defendant-Appellee.

No. 09-4105
(D.C. No. 2:08-CV-00222-BSJ)
(D. Utah)

---

**ORDER AND JUDGMENT**[*]

---

Before **LUCERO**, **PORFILIO**, and **MURPHY**, Circuit Judges.

---

Shahab Shabestari appeals the grant of summary judgment disposing of his employment discrimination and unlawful retaliation claims. Exercising jurisdiction under 28 U.S.C. § 1291, we affirm.

---

[*] After examining the briefs and appellate record, this panel has determined unanimously that oral argument would not materially assist the determination of this appeal. See Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G). The case is therefore ordered submitted without oral argument. This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. It may be cited, however, for its persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

# I

Shabestari, a Muslim from Iran, was employed by Utah Non-Profit Housing ("UNPH") in its accounting department from 1999 to 2003. He was recommended for hiring and directly supervised by Mary Jane Fine. Fine was in turn supervised by Marion Willey, UNPH's executive director. On several occasions, Shabestari complained to Willey about Fine's management style. Shabestari did not mention racial or religious harassment during any of these conversations.

In early 2003, UNPH discovered that invoices for which Shabestari was responsible were missing, causing UNPH to lose revenue. Fine recommended to Willey that Shabestari be placed on a corrective action plan. Willey declined.

On December 5, 2003, Willey met with Shabestari to discuss an unspecified grievance. At that meeting, Shabestari voiced his desire to report to Willey rather than to Fine, indicated his dissatisfaction with UNPH's organizational structure, and complained about Fine's allegedly unprofessional and angry behavior. Willey asked Shabestari for evidence to substantiate his claims against Fine, but he produced none.

After that meeting, Willey requested that Fine inform him about Shabestari's job performance. She reported that Shabestari performed deficiently in several areas and suggested that he be placed on a probationary plan. Willey

rejected Fine's suggestion and instead discharged Shabestari due to his poor job performance and his inability to work with his supervisor and others.[1]

Following his termination, Shabestari filed a complaint with the Utah Anti-Discrimination and Labor Division. He alleged for the first time that Fine had made disparaging remarks pertaining to his race, his Muslim religion, and his Iranian national origin. According to Shabestari, Fine made at least three disparaging remarks in 2003: one in October, one in November, and one in December. Shabestari produced a different witness to substantiate each remark.[2]

Shabestari also asserted two retaliation claims against UNPH. The first was a pre-termination claim based on protected activity. The second concerned an inquiry to the FBI made by Marci Milligan, Fine's domestic partner, about Shabestari's alleged aggressive behavior near their home. As a result of this inquiry, Shabestari was interviewed by the FBI. The matter was later dropped.

In March 2008, Shabestari filed suit against UNPH and Fine in federal district court. He alleged retaliation and discrimination based on race, religion,

---

[1] Shabestari contends that UNPH gave numerous, inconsistent reasons for discharging him. According to Shabestari, this inconsistency supports his claim that the given reasons were pretextual. In light of our conclusion, discussed infra, that UNPH advanced a valid affirmative defense, we need not address this argument.

[2] One of the witnesses also alleged that Willey made a racially inappropriate remark. However, this alleged remark could not have contributed to a hostile work environment because it was made after Shabestari was discharged and outside of his presence.

and national origin in violation of Title VII of the Civil Rights Act of 1964 ("Title VII"). Shabestari also asserted various state-law claims.[3] UNPH filed a motion for summary judgment, which was granted. This appeal followed.

## II

We review a district court's grant of summary judgment de novo, viewing the record in the light most favorable to the nonmoving party. Warren v. Liberty Mut. Fire Ins. Co., 555 F.3d 1141, 1145 (10th Cir. 2009). Summary judgment is appropriate if "there is no genuine issue as to any material fact" and "the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c)(2). Although courts may not make credibility determinations or weigh evidence at the summary judgment stage, "[w]here the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986) (quotations omitted).

## A

Title VII makes it unlawful for an employer "to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a)(1). "Although Title VII does not explicitly

---

[3] Shabestari has since abandoned his state-law claims, as well as his claims against Fine.

mention hostile work environment, a victim of a racially hostile work environment may nevertheless bring a cause of action under Title VII." Tademy v. Union Pac. Corp., 520 F.3d 1149, 1156 (10th Cir. 2008) (quotation omitted).

Shabestari alleges that Fine's disparaging comments created a hostile work environment. Moreover, he claims UNPH is vicariously liable for her behavior. We have explained that an employer can be vicariously liable for a hostile work environment created by a supervisor in two situations:

> First, the employer is vicariously liable when "the supervisor's harassment culminates in a tangible employment act, such as discharge, demotion, or undesirable reassignment." [Burlington Indus., Inc. v.]Ellerth, 524 U.S. [742,] 765 [(1998)]. In that situation, the employer has no affirmative defense available. Id. Second, an employer may be vicariously liable for a hostile work environment, even absent a tangible employment action. However, in that circumstance, the employer will not be liable if it proves the following affirmative defense by a preponderance of the evidence: (1) it "exercised reasonable care to prevent and correct promptly any [racially] harassing behavior," and (2) the plaintiff "unreasonably failed to take advantage of any preventive or corrective opportunities provided by the employer or to avoid harm otherwise." Id.; see Faragher[v. City of Boca Raton], 524 U.S. [775,] 807 [(1998)].

Pinkerton v. Colo. Dep't of Transp., 563 F.3d 1052, 1059 (10th Cir. 2009) (parallel citations omitted).

Shabestari argues that his termination falls within the first situation and therefore the Ellerth/Faragher affirmative defense does not apply. More specifically, he alleges that he suffered a tangible employment action because Fine caused Willey to fire him under a subordinate bias (or "cat's paw") theory.

-5-

"To prevail on a subordinate bias claim, a plaintiff must establish more than mere 'influence' or 'input' in the decisionmaking process.  Rather, the issue is whether the biased subordinate's discriminatory reports, recommendation, or other actions caused the adverse employment action."  EEOC v. BCI Coca-Cola Bottling Co., 450 F.3d 476, 487 (10th Cir. 2006).  The burden is on the plaintiff to prove causation.  Id. at 488.

Undisputed evidence shows that Willey made the decision to discharge Shabestari.  Willey disregarded Fine's recommendation to place Shabestari on a probationary plan and testified unequivocally that his ultimate decision to terminate Shabestari was made independent of the opinions of others.  Because Shabestari cannot show that Willey "rel[ied] exclusively on the say-so of [Fine], . . . the causal link is defeated."  Id.  Accordingly, Shabestari has not shown that Fine's behavior culminated in a tangible employment action and UNPH may claim the Ellerth/Faragher defense.

**B**

To prevail on an Ellerth/Faragher defense, an employer must first demonstrate that it exercised reasonable care to prevent and correct harassing behavior.  See Pinkerton, 563 F.3d at 1059.  Shabestari concedes that he received a copy of UNPH's employment manual.  That manual emphasized that discrimination "based on an individual's sex, race, ethnicity, age, religion, or any other legally-protected class will not be tolerated [by UNPH]."  To implement this

policy, UNPH conducted annual anti-harassment training for all personnel. Furthermore, when Shabestari complained to Willey concerning job-related problems, Willey conferred with various employees, attended meetings, or conducted his own investigation in an attempt to settle the matter. These facts indicate that UNPH exercised reasonable care to prevent or correct harassing behavior in the workplace.

As to the second element of the defense—whether the employee unreasonably failed to take advantage of the available corrective procedures—Shabestari admitted that he was aware of UNPH's grievance policy and the procedures used to implement it. Nonetheless, Shabestari did not inform Willey of Fine's alleged racial or religious harassment, let alone file a grievance pursuant to company policy. Although Shabestari now claims he feared retaliation, "a generalized fear of retaliation simply is not sufficient" to explain a failure to report harassment. Id. at 1063 (collecting cases). Shabestari unreasonably failed to inform UNPH about any racial or religious harassment he suffered at the hands of Fine or any other employees at UNPH.[4]

---

[4] Shabestari claims he attempted to report Fine's alleged harassment to UNPH's board of directors. However, UNPH's grievance policy specifically states that an employee must report harassment to his "immediate supervisor" or, if the immediate supervisor is the offending party, he should report this behavior to UNPH's human resources manager or executive director. Moreover, Shabestari did not mention racial or religious harassment in any of his attempted communications with UNPH board members.

We conclude that UNPH met its burden of proof under the Ellerth/Faragher defense and therefore summary judgment on Shabestari's discrimination claims was proper. Because we affirm on this ground, we need not address Shabestari's arguments concerning pretext or his contention that he established a prima facie case of discrimination.

**C**

Shabestari's final argument is that UNPH retaliated against him by terminating his employment and by having Milligan contact the FBI. Title VII forbids an employer from retaliating against an individual because that individual opposed an unlawful employment practice or because that individual "has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing" pursuant to Title VII. 42 U.S.C. § 2000e-3(a). To make out a prima facie case of retaliation, a plaintiff must establish: "(1) [he] engaged in protected opposition to discrimination; (2) [he] suffered an adverse action that a reasonable employee would have found material; and (3) a causal nexus exists between [his] opposition and the employer's adverse action." Montes v. Vail Clinic, Inc., 497 F.3d 1160, 1176 (10th Cir. 2007).

Shabestari did not inform UNPH that Fine made offensive remarks about his race, religion, or national original. Consequently, he cannot show that he engaged in protected opposition to discrimination before he was discharged. Summary judgment was therefore appropriate on his pre-termination retaliation claim.

-8-

Shabestari's post-termination retaliation claim rests on a document purporting to be an email from Milligan to the FBI. Even if this document were admissible, it does not establish the requisite causal connection between Shabestari's protected opposition and UNPH's adverse action. Shabestari has failed to show a link between Milligan and UNPH (except the personal relationship between Milligan and Fine) that would impute responsibility to UNPH for Milligan's actions. Likewise, Shabestari has offered no evidence demonstrating that Milligan was acting as UNPH's agent when she contacted the FBI. Accordingly, we conclude that no rational trier of fact could find that Milligan's contact with the FBI was retaliation by UNPH. Summary judgment in favor of UNPH was proper.

## III

For the foregoing reasons, the judgment of the district court is **AFFIRMED**.

Entered for the Court

Carlos F. Lucero
Circuit Judge